**BAKER BOTTS L.L.P.**
Richard B. Harper (RH 5979)
Maureen P. Reid (MR 2326)
30 Rockefeller Plaza
New York, New York 10112
Tel:    (212) 408-2500
Fax:    (212) 408-2501

Van H. Beckwith (to be admitted *pro hac vice*)
Allyson N. Ho (to be admitted *pro hac vice*)
2001 Ross Avenue
Dallas, Texas 75210
Tel:    (214) 953-6500
Fax:    (214) 953-6503

*Attorneys for Defendants*
*Cadbury Schweppes Americas Beverages,*
*Snapple Beverage Corporation,*
*Snapple Distributors, Inc.*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STACY HOLK,<br><br>             Plaintiff,<br><br><br>             v.<br><br>CADBURY SCHWEPPES AMERICAS BEVERAGES, SNAPPLE BEVERAGE CORPORATION, SNAPPLE DISTRIBUTORS, INC., COTT QUALITY BEVERAGE, INC., ESSEX COTT DISTRIBUTORS, INC., and JOHN DOE (fictitious -- representing one or more persons or entities involved in the manufacture, sale and/or distribution of the products identified herein but whose identity is currently unknown),<br><br>             Defendants. | Civil Action No.<br><br><br>**NOTICE OF REMOVAL** |

Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendant Snapple Beverage Corp. ("Snapple") files this Notice of Removal from the Superior Court of the State of New Jersey, Law Division, Monmouth County, in which the above-captioned case is now pending, to the United States District Court for the District of New Jersey, Newark Division.

As grounds for removal, Snapple states as follows:

<strong><u>BACKGROUND</u></strong>

1.     On or about May 18, 2007, an action was commenced in the Superior Court of New Jersey, Law Division, Monmouth County entitled *Stacy Holk v. Cadbury Schweppes Americas Beverages, Snapple Beverage Corporation, Snapple Distributors, Inc., Cott Quality Beverage, Inc., Essex Cott Distributors, Inc., and John Doe*, Docket No. L-2462-07 ("State Court Action"). A true and correct copy of the Class Action Complaint and Demand for Jury Trial is attached hereto as Exhibit 1. No other documents have been filed in the State Court Action.

2.     On or about June 1, 2007, Snapple was served with the Summons and Complaint.

3.     The Complaint names as defendants: (a) Cadbury Schweppes Americas Beverages, which is not an operating entity but merely a reference to various beverage companies in the U.S. operating under joint ownership; (b) Snapple Beverage Corporation, which is a Delaware corporation with its principal place of business in New York; (c) Snapple Distributors, Inc., which is a Delaware corporation with its principal place of business in New York; (d) Cott Quality Beverage, Inc., which, upon information and belief, is a New Jersey corporation with its principal place of business in New Jersey;

1

and (e) Essex Cott Distributors, Inc., which, upon information and belief, is a New Jersey corporation with its principal place of business in New Jersey. *See* Declaration of David Wexler at ¶ 2. The citizenship of the unnamed or "John Doe" defendants need not be considered for the purposes of determining whether removal is proper. *See* 28 U.S.C. § 1441(a).

4.     Pursuant to the Complaint, Plaintiff brings this action on behalf of herself and all other similarly situated persons in New Jersey who allegedly purchased (within six years prior to the commencement of the suit) either: (a) "a Snapple or Cadbury Schweppes 'All Natural' beverage that contained HFCS [High Fructose Corn Syrup] or other unnatural ingredients"; (b) "an improperly labeled Snapple 'juice drink'"; or (c) "a Snapple 'red tea' beverage." Plaintiff seeks damages, injunctive relief, and disgorgement of profits from the sale of the above-referenced beverages. Compl. ¶ 5.

5.     On behalf of the putative class, Plaintiff seeks to enjoin Defendants from: (a) describing products as "All Natural" as long as they contain HFCS; (b) labeling Snapple "red tea" as being tea and describing products as "red tea"; and (c) titling and graphically depicting fruit drinks with fruits that are not contained in the form of juice in the product. Compl. ¶ 68.

6.     The principal injuries resulting from the alleged conduct did not occur in New Jersey, but nationwide. The products at issue are sold in all fifty states (Compl. ¶ 26) and, thus, any alleged injuries in New Jersey are not specific to New Jersey.

7.     On behalf of the putative class, Plaintiff also seeks to: (a) disgorge Defendants' profits obtained by the practices alleged; (b) recover from Defendants damages equal the amounts paid for the purchase of the products at issue; (c) recover

2

treble damages under the New Jersey Consumer Fraud Act; and (d) recover attorneys' fees. *See id.*

## BASIS FOR REMOVAL

8.     The Court has original jurisdiction over this action, and the action may be removed to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"). Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.).

9.     Specifically, the Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), in that:  (a) this is an alleged class action of 100 or more members, (b) there is at least one defendant that is not a citizen of New Jersey, and (c) the amount in controversy exceeds the sum or value of $5,000,000 in the aggregate, exclusive of interest and costs.

### A.     Class Action Consisting of More Than 100 Members

10.     This is an alleged class action consisting of 100 or more members. *See* 28 U.S.C. § 1332(d)(5)(B).  Plaintiff brings this class action on behalf of herself and all others similarly situated in New Jersey who allegedly purchased (within six years prior to the commencement of the suit) either:  (a) "a Snapple or Cadbury Schweppes 'All Natural' beverage that contained HFCS [High Fructose Corn Syrup] or other unnatural ingredients"; (b) "an improperly labeled Snapple 'juice drink'"; or (c) "a Snapple 'red tea' beverage." Compl. ¶ 5.

11.     Plaintiff alleges specifically that the proposed class "exceeds one thousand (1,000) persons." Compl. ¶ 10.  Accordingly, the number of proposed class members is greater than 100 for the purposes of 28 U.S.C. § 1332(d)(5)(B).

3

**B.     Diversity of Citizenship**

12.     Under CAFA, diversity exists when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Thus, only minimal diversity is required.

13.     There is minimal diversity among the parties to this action. Based on the allegations of the Complaint, Plaintiff Stacy Holk is a citizen of New Jersey. Compl. ¶ 5. Defendant Snapple Beverage Corp. is (and was at the time Plaintiff commenced this action) a Delaware corporation with its principal place of business in New York. *See* Declaration of David Wexler at ¶ 2.

14.     Thus, because Snapple Beverage Corp. is not a citizen of New Jersey, the minimal diversity requirements of CAFA are satisfied.

15.     Notably, Cadbury Schweppes Americas Beverages is not an operating entity, but simply a name used to describe a collection of companies. Snapple Distributors, Inc. is a Delaware corporation with its principal place of business in New York and is in the business of distributing, not labeling, Snapple products. Similarly, neither Cott Quality Beverages, Inc. nor Essex Cott Distributors, Inc. are proper defendants because they are no longer authorized distributors of Snapple products.

**C.     The Amount In Controversy Requirement Is Satisfied**

16.     On behalf of herself and the other putative class members, Plaintiff alleges claims for violation of the New Jersey Consumer Fraud Act (citing *N.J.S.A.* 56:8-1 et seq.), unjust enrichment and common law restitution, breach of express warranty, and breach of implied warranty of merchantability. Compl. ¶¶ 46-67. Based on these claims, Plaintiff seeks, on behalf of herself and the other putative class members, several forms

4

of relief, including: (a) damages against the Defendants equal to the amounts paid for the products in question; (b) an injunction enjoining Defendants from (i) describing products as "All Natural" as long as they contain HFCS; (ii) labeling Snapple "red tea" as being tea and describing products as "red tea"; and (iii) titling and graphically depicting fruit drinks with fruits that are not contained in the form of juice in the product; (c) disgorgement of all profits that the Defendants earned from the sale of these products; (d) treble damages under the Consumer Fraud Act, and (e) other relief, including attorney's fees and costs. Compl. ¶ 68.

17.     CAFA explicitly requires the aggregation of claims in class actions for determining if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6).

18.     Where, as here, the complaint does not claim a specific amount of damages, "a defendant's notice of removal then serves the same function as the complaint would in a suit filed in federal court." *Morgan v. Gay*, 471 F.3d 136, 474 (3d Cir. 2007) (quoting *Brill v. Countrywise Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005)). An analysis of the claims asserted and the relief sought demonstrates that the amount in controversy requirement is easily satisfied.

19.     First, Plaintiff seeks to recover damages equal to at least the amounts paid for the products at issue by all persons in New Jersey for the six years preceding the Complaint. Compl. ¶¶ 9, 68. The Snapple products at issue include, but are not limited to, the following:   Acai Blackberry Juice Drink, Mixed Berry, Mandarin Tangerine, Peach Pomegranate, Lime Green Tea, Kiwi Teawi, Raspberry Tea, Peach Tea, Mint Tea, Lemon Tea, Caffeine Free Lemon Tea, Lemonade Iced Tea, Lemonade, Pink Lemonade,

5

Super Sour Lemonade, Snapricot Orange, Snapple Apple, Cranberry Raspberry, Fruit Punch, Grapeade, Kiwi Strawberry, Mango Madness, Raspberry Peach, Summer Peach, Go Banana, Out-Red-Geous Orange, Orangeade and What-a-Melon. Compl. ¶¶ 13, 19, 29.

20.     Plaintiff claims that each and every sale of these products constituted a violation of the New Jersey Consumer Fraud Act. Compl. ¶¶ 46-51. By asserting that each sale violated the Act, Plaintiff seeks three times the total sales of these products in New Jersey over the six-year period because the Consumer Fraud Act provides for mandatory treble damages, plus attorneys' fees. *See N.J.S.A.* 56:8-19.

21.     In each of the past six years – the period allegedly at issue in the Complaint – total sales of these Snapple products in New Jersey exceeded $5 million. *See* Declaration of David Wexler at ¶ 3. In fact, in 2006, gross sales of the implicated Snapple products in New Jersey exceeded $5 million. *See id.* The $5 million threshold is thus satisfied on this ground alone.

22.     Second, the Complaint seeks injunctive relief. The value of the injunctive relief Plaintiff seeks against all defendants is aggregated for the purposes of determining the amount in controversy under CAFA. *See Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 347 (1977) (where plaintiff seeks injunctive relief, the amount in controversy is measured by the value of the object of the litigation). Here, it is clear given the size of the proposed class that any injunctive relief would cost the Defendants far in excess of $5 million – even if each class member's share of such relief were just a few dollars. Accordingly, the jurisdictional threshold is satisfied on this ground as well.

6

23.     Third, Plaintiff seeks attorneys' fees, which may be considered in calculating the amount in controversy.  *See In re Intel Corp. Microprocessor Antitrust Litig.*, 436 F. Supp. 2d 687, 690 (D. Del. 2006).

24.     While Snapple in no way concedes that the Plaintiff's claims or legal theories are sound and denies that its labeling and marketing of products sold in New Jersey (or anywhere else) violated any laws or regulations, the amount in controversy framed by the Complaint exceeds $5,000,000, exclusive of interest and costs.

## PROCEDURAL STATEMENTS

25.     This Notice of Removal is proper and timely because Snapple was served with the Complaint less than thirty (30) days before filing this Notice of Removal.  *See* 28 U.S.C. § 1446(b).

26.     Venue in this Court is appropriate under 28 U.S.C. § 1441(a), because this District and Division embrace the place in which the State Court Action has been pending.

27.     As of the date of this Notice of Removal, no defendant has filed a responsive pleading to the Complaint or otherwise appeared in the Superior Court of New Jersey.

28.     Because the Court has original jurisdiction over this Action under 28 U.S.C. § 1332(d), no other defendants need join in this Notice of Removal.  *See* 28 U.S.C. § 1453(b).

29.     All pleadings and other filings in the State Court Action are attached to this Notice of Removal as required by 28 U.S.C. §1446(a).

30.     In accordance with 28 U.S.C. § 1446(d), Snapple will promptly provide written notice of removal to Plaintiff (by service via electronic and overnight mail, upon

7

her counsel of record) and shall file a copy of the Notice of Removal with the Clerk of the Superior Court of New Jersey, Law Division, Monmouth County.

31.     A completed Federal Civil Cover Sheet, Rule 7.1 Statement and the removal fee of $350 accompany this Notice of Removal.

32.     The joinder in or consent to this Notice of Removal may be executed in multiple counterparts and facsimile signatures will be deemed originals.

33.     All named defendants reserve the right to supplement or amend this Notice of Removal.

## **DEMAND FOR JURY TRIAL**

34.     Snapple requests a trial by jury of all issues that may properly be tried to a jury.

## **PRAYER**

**THEREFORE**, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d) based upon class action allegations, and removal pursuant to 28 U.S.C. § 1453 is appropriate.  Therefore, Snapple hereby removes this action now pending against it in the Superior Court of New Jersey, Law Division, Monmouth County to this honorable Court.


Dated: June 28, 2007                          Respectfully submitted,

Richard B. Harper (RH 5979)
Maureen P. Reid (MR 2326)
BAKER BOTTS L.L.P.
30 Rockefeller Center
New York, New York 10112
Tel:    (212) 408-2500
Fax:    (212) 408-2501

Van H. Beckwith (to be admitted *pro hac vice*)
Allyson N. Ho (to be admitted *pro hac vice)*
BAKER BOTTS L.L.P.
2001 Ross Avenue
Dallas, Texas 75201
Tel:    (214) 953-6500
Fax:    (214) 953-6503

*Attorneys for Defendants
Cadbury Schweppes Americas Beverages,
Snapple Beverage Corporation,
Snapple Distributors, Inc.*

## CERTIFICATE OF SERVICE

       I hereby certify that the foregoing was served by electronic and overnight mail on this 28th day of June, 2007, on the following counsel of record:

Philip A. Tortoreti
Tortoreti, Tomes & Callahan, P.C.
150 B Tices Lane
East Brunswick, NJ 08816
ptort@ttclawyers.com

Michael Halbfish
Tunney & Halbfish, Esqs.
245 Main Street
Woodbridge, NJ 07095
MichaelHalbfish@aol.com

                                  Maureen P. Reid

NY01:194296.4

EXH. 1

**TORTORETI, TOMES & CALLAHAN, P.C.**
150 B Tices Lane
East Brunswick, New Jersey 08816
(732) 257-9100
Attorneys for Plaintiff(s)

**TUNNEY & HALBFISH, ESQS.**
245 Main Street
Woodbridge, NJ 07095
(732) 636-4909
Attorney(s) for Plaintiff(s)

| | |
|---|---|
| STACY HOLK , | SUPERIOR COURT OF NEW JERSEY |
| | LAW DIVISION |
| Plaintiff | MONMOUTH COUNTY |
| | DOCKET NO.: |
| v. | L 2462-07 |
| | Civil Action |
| CADBURY SCHWEPPES AMERICAS | |
| BEVERAGES; | **CLASS ACTION COMPLAINT** |
| SNAPPLE BEVERAGE CORPORATION; | **AND DEMAND FOR JURY TRIAL** |
| SNAPPLE DISTRIBUTORS, INC.; | |
| COTT QUALITY BEVERAGE , INC.; | |
| ESSEX COTT DISTRIBUTORS, INC.; | |
| and JOHN DOE (fictitious – representing | |
| one or more persons or entities involved | |
| in the manufacture, sale and/or distribution | |
| of the products identified herein but whose | |
| identity is currently unknown) | |
| | |
| Defendants | |



Plaintiff, Stacy Holk, residing at 597 Wildflower Court, Morganville, Marlboro

Township, Monmouth County, New Jersey complaining of the Defendants says:

## NATURE OF ACTION

1.   This is a class action for declaratory judgment, injunctive relief, reimbursement of

losses sustained and damages alleging that Defendants' labeling and distribution of

drinks is misleading and/or inaccurate and/or deceptive.

2.   The mislabeling includes, but is not limited to, the following:

1

a.  **"ALL NATURAL"** - Labeling products including but not limited to Snapple as "All Natural" when the products contain High Fructose Corn Syrup (HFCS) and/or other non natural products. The term "All Natural" is regularly used by manufacturers to induce consumers into believing that the product has fewer chemically altered or man-made ingredients and therefore the product is a more healthy choice than competing products that contain processed ingredients – and perhaps worth paying a premium for that benefit. The company is implying, of course, that natural products are safer and perhaps more nutritious than non-natural ones. Common sense dictates that use of the term natural should be limited to only those products that contain no artificial or synthetic ingredients and/or consist entirely of ingredients that are only minimally processed. However, some companies deceptively use the term natural to describe products containing ingredients that have been chemically altered from their natural state and cannot be considered "minimally processed." The use of the term natural to describe such products creates consumer confusion, is deceptive, and detrimentally affects competing products that are actually naturally produced or contain only ingredients that are chemically unchanged from their natural state. Plaintiff alleges that Defendants inappropriately describes certain products as being "All Natural" when, in fact, they are not.

b.  **Made from the Best Stuff on Earth** - Advertising Snapple as being "Made from the Best Stuff on Earth" when in fact the products contain

2

HFCS and/or other ingredients inconsistent with Snapple's claim of being "Made from the Best Stuff on Earth."

c.  **FALSE LABELING** - Labeling juice drinks and teas so as to mislead the consumer as to the actual type of juice and/or primary ingredients in the drink.

**Example #1.**  The Acai Blackberry Juice drink contains neither acai berry juice nor blackberry juice.  This is especially significant because acai berry juice is frequently marketed as a premium priced exotic juice that is extremely high in antioxidants.  The first listed ingredient in this juice is water and the second listed ingredient is HFCS.  The drink label shows depictions of blackberries and round purple berries presumed to be acai berries.  There is a an arrow pointing to an acai berry stating "All together now — it's "Ah-Sigh-Ee".  The label indicates that the only juice contained in the product is pear juice, which is not even mentioned on the product label.

**Example #2.**  The Acai Mixed Berry Red Tea drink states on the front of the label "**red tea** all natural low calorie." It also states  "contributes to a **HEALTHY IMMUNE SYSTEM**∗ real juice" and "Authentic Red Tea with Natural Berry Flavors and Other Natural Flavors."  The depiction on the label shows what appears to be a strawberry, a raspberry and three acai berries.  The label on the back states "In our quest for the perfect tea, we scoured the planet and found rooibos ("roy-boss"), a rare antioxidant-rich tea that only grows in the Western Cape region of South Africa.  We

3

topped it off with real fruit juice packed with Vitamin C to contribute to a strong, healthy immune system. This "tea" contains neither berry juices nor acai juice. The only juice contained in this "tea" is pear juice. In addition, while rooibos is occasionally classified with teas, rooibos is made from a different leaf and technically not a tea. As the Tea Association of the United States of America states, (http://www.teausa.com/general/501g.cfm) "[a]ll tea comes from the Camellia sinensis plant, a warm-weather evergreen."...."Herbal teas do not come from Camellia sinensis, but are infusion of leaves, roots, bark, seeds or flowers of other plants. They lack many of the unique characteristics of tea and are not linked with the research on the potential health benefits of traditional teas."

The term "Red Tea" is made even more confusing by the fact that from the 16th Century until the beginning of the 20th Century, the term "Red Tea" was used by Chinese tea merchants as their name for what the rest of the world would call Black Tea. Today, the term is still used in China, but much less commonly.

(see http://www.teausa.com/general/teasandhealth/214g.cfm#R)

It should be noted that the Snapple website

(http://www.snapple.com/index.asp?pageid=2&subid=2&contentid=2)

refers people to the above cited www.teausa.com website and the Snapple website states that it is "The official site of the Tea Association of the U.S.A.," and "the definite source on all matters related to tea!"

4

3. Plaintiffs bring this action on behalf of themselves and on behalf of a class of similarly situated persons, seeking declaratory judgment, injunctive relief and damages.

4. Plaintiff's claims against Defendants include (1) violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et. seq. (2) Unjust enrichment, (3) Breach of Express Warranty and (4) Breach of the Implied Warranty of Merchantability.

## PARTIES

5. Plaintiff, is and at all times relevant hereto has been, a resident of New Jersey domiciled in Morganville, Marlboro Township, Monmouth County and is over the lawful age of majority. Plaintiff is filing this claim on behalf of herself and all New Jersey persons similarly situated who purchased a product described in this Complaint within six years prior to the filing of the case at bar until present. Specifically excluded from the class is any entity in which any Defendant has a controlling interest, and the officers, directors, employees, affiliates, subsidiaries, legal representatives, heirs, successors, and their assigns of any entity, together with any immediate family member of any officer, director or employee of said companies. Also excluded from the Class is any Judge or Magistrate presiding over this Action and members of their immediate families, and any counsel for any Defendant, counsel's staff, and immediate families.

6. Defendants Cadbury Schweppes Americas Beverages, Snapple Beverage Corporation, Snapple Distributors Inc., Cott Quality Beverages Inc., and Essex Cott Distributors, Inc. were the manufacturers, sellers and distributors of Cadbury Schweppes products that were misrepresented to consumers and which plaintiff

5

purchased and as such are "persons" as defined under the Consumer Fraud Act N.J.S.A. 56:8-1 et seq. Snapple Distributors Inc., Cott Quality Beverages Inc., and Essex Cott Distributors Inc. are all New Jersey based corporations. Snapple products are sold throughout the United States and internationally.

## JURISDICTION AND VENUE

7.      This Court has personal jurisdiction over the Plaintiff's claims as Defendants are either located here or are conducting substantial business in this State and as this action accrued in whole or in part in this state.

8.      Venue is properly laid in Monmouth County as Plaintiff resides in this County and some or all of the purchases that are the subject matter of this litigation occurred in this County.

## CLASS ACTION ALLEGATIONS

9.      Plaintiff brings this action on behalf of herself and all other similarly situated persons in New Jersey, pursuant to R. 4:32-1 et seq. Plaintiff represents

1)   all persons in New Jersey who purchased a Snapple or Cadbury Schweppes "All Natural" beverage that contained HFCS or other unnatural ingredients during the six (6) years prior to the commencement of suit until such time as Defendants reform said practice,

2)   all persons in New Jersey who purchased an improperly labeled Snapple "juice drink" during the six (6) years prior to the commencement of suit until such time as Defendants reform said practice, and

6

.3) all persons in New Jersey who purchased a Snapple "red tea" beverage during the six (6) years prior to the commencement of suit until such time as Defendants reform said practice.

10.   Upon information and belief the members of each class exceeds one thousand (1,000) persons.

11.   Plaintiff is entitled to bring this as a class action for the following reasons:

   a.   Plaintiff represents an ascertainable class of persons who purchased Defendant's products. The class is so numerous that joinder of all of its members is impracticable.

   b.   There exist questions of law and fact common to each class including, but not limited to;

   1.   Whether HFCS is an "All Natural" ingredient.

   2.   Whether use of the phrase "All Natural" to describe products containing HFCS is an unfair and deceptive practice because HFCS is an artificial, highly processed ingredient.

   3.   Whether Defendant expressly warranted that its products contained ingredients occurring in nature or minimally processed by use of the phrase "All Natural."

   4.   Whether Defendants breached the express warranty by using HFCS as an ingredient in Defendants' products.

   5.   Whether "red tea" is actually tea.

   6.   Whether the use of the phrase "red tea" without further clarification and explanation is misleading and/or deceptive and thus, is an

7

unfair and deceptive practice.

7.      Whether Defendants expressly warranted that its "red tea" products contained tea.

8.      Whether Defendants breached the express warranty because the "red tea" product is not tea.

9.      Whether the depiction of fruit on the label that is not contained in the product is misleading and/or deceptive and thus an unfair and deceptive business practice.

10.     Whether Defendants expressly and/or impliedly warranted that their products contained the fruit depicted on the product labels.

11.     Whether said absence of fruit juice from the fruit(s) depicted on the front of the product label is a breach of Defendants implied or express warranty.

12.     Whether Defendants' actions as above described violate the NJ Consumer Fraud Act, **N.J.S.A.** 56:8-1 et. seq.

13.     Whether Defendants should be enjoined from continuing the above-described practices.

14.     Whether Defendants should be required to make restitution, disgorge profits, reimburses losses, pay damages and pay treble damages as a result of the above-described practices.

15.     Whether the claims of the class representative are typical of the claims of each class member and arise out of common schemes or course

8

of conduct perpetrated by Defendants on an unsuspecting consuming public.

16. Whether the class representative will fairly and adequately protect the interest of each class;

17. Whether Defendants have acted on grounds generally applicable to each class member in that the labeling and claims is the same for each product sold.

18. Whether the questions of law and fact common to the members of the classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

19. Whether Plaintiff will fairly and adequately protect the interests of the class.

20. Whether Plaintiff retained experienced counsel in class action and complex civil litigation and is qualified to serve as class counsel.

## STATEMENT OF FACTS

12. Defendants advertise and sell consumer goods to the public as defined under the Consumer Fraud Act.

13. The labeling makes the affirmative representation that the product as sold is a specific juice drink, e.g. Acai Blackberry Juice Drink.

14. The product does not contain the represented juice, e.g. the Snapple Acai Blackberry Juice Drink contains no Acai berry juice and no blackberry juice, even though these fruits are identified and depicted on the front display panel.

9

15.   As such, Defendant makes an affirmative misrepresentation as to the quality of its drink being of a specified fruit or specified fruits when in fact, it is primarily a water and High Fructose Corn Syrup (HFCS) drink.

16.   The fruit drink contains only between five percent (5%) and ten percent (10%) fruit juice.

17.   There are specific regulatory requirements that when stated, names of juices must be descending order of predominance by volume, unless the label indicates that the named juice is used as a flavor.  See 21 CFR 102.33(b), 102.33(c), and 102.33 (d).

18.   Defendant's labeling violates regulatory requirements and as such is a per se violation of the NJ Consumer Fraud Act.

19.   Defendants manufacture and/or market a line of "red tea" that includes "red  tea" in Acai, Mixed Berry, Manderin Tangerine, and Peach Pomegranate.

20.   Defendant's "red tea" labels state "contributes to a **HEALTHY IMMUNE SYSTEM**＊ real juice" and "Authentic Red Tea with Natural Berry Flavors and Other Natural Flavors." The label states in small print above the "Nutrition Facts" that it contains ten percent (10%) juice.

21.   The "red tea" line uses pear juice and does not contain Acai, Mixed Berry, Manderin Tangerine and Peach Pomegranate juices that are the named tea flavors.

22.   The labels depict pictures of the fruits for which the tea flavors are named; e.g. the Acai Mixed Berry tea label shows a picture of a strawberry, a raspberry, and three (3) acai berries.

23.   The label on the back states "In our quest for the perfect tea, we scoured the planet and found rooibos ("roy-boss"), a rare antioxidant-rich tea that only grows in the

10

Western Cape region of South Africa. We topped it off with real fruit juice packed with Vitamin C to contribute to a strong, healthy immune system."

Rooibos is not a tea. This is supported by www.teausa.com, the website that Snapple cites as being "the definite source on all matters related to tea." See http://www.teausa.com/general/501g.cfm) and

http://www.teausa.com/general/teasandhealth/214g.cfm#R).

24.    While Rooibos tea may also contain health benefits, the body of research supporting claims for Rooibos is tiny in comparison to the volumes of scientific evidence published about the health benefits of Camella Sinensis.

(http://www.teausa.com/glossary/redtea) "[a]ll tea comes from the Camellia sinensis plant, a warm-weather evergreen."…."Herbal teas do not come from Camellia sinensis, but are infusion of leaves, roots, bark, seeds or flowers of other plants. They lack many of the unique characteristics of tea and are not linked with the research on the potential health benefits of traditional teas."

25.    Snapple markets the health benefits of tea on the www.snapple.com web site. The website reads in part

http://www.snapple.com/index.asp?Pageid=2&subid=2&contentid=2)

## TEA FOR LIFE

### The stuff to know about tea

If you have a pulse, and I hope you do or none of this information will do you any good, you've most likely heard things about tea being healthy. What gives? Well, what's going on when you drink tea is nothing less than the age-old battle between good and evil.

Essentially, tea contains antioxidants, which fight free radicals = instigators of some nasty problems.

11

**Free Radicals = Bad**

Free radicals are on your body's most wanted list. Their pictures hang in the post office. Free radicals are as evil as they sound, running amuck and spray-painting crude expressions on cell walls. Okay, so maybe there's no graffiti involved, but they do damage the components of cells and have been implicated in a slow, sinister chain reaction that ultimately leads to poor health.

**Antioxidants = Good**

When you drink tea, whether black or green or decaffeinated or iced, you're calling on the good guys, antioxidants, which is sort of like sicking a pack of pit bulls on free radicals. Antioxidants neutralize them and pitch in to help rejuvenate cells.

The antioxidants in tea are known as flavonoids, and scientists are producing a growing body of evidence that suggests they protect us. Polyphenols in particular, one type of antioxidant, may play a role in lowering the oxidation of LDL-cholesterol, the evil twin of HDL-cholesterol.

Not bad for something that tastes good too. Unlike seatbelts, umbrellas, and swim floaties, which protect you but don't taste nearly as good as tea.

**Curious? Learn more**

For more information, or if you've run out of cereal boxes to read, visit these links:
**www.teahealth.co.uk** has information about antioxidants and their benefits.
**www.internethealthlibrary.com/DietandLifestyle/Tea-research.htm**
for a brief description of the health benefits of tea.
**www.teausa.com** The official site of the Tea Association of the U.S.A., and "the definite source on all matters related to tea!"

26.    Snapple is widely distributed and according to the Cadbury Schweppes

12

website wwcadburyscheweppes.com/EN/Brands/About/Beverages/factsheet_snaplle.htm)

consumers drank over 150 million gallons of Snapple in 2000 – more than half a

gallon for every person in the US, and Snapple can be purchased in every state in the

US and in over 80 countries.

27.     The FAQ on the Cadbury-Schweppes web site states

"**What does "Made from the Best Stuff on Earth®" mean?**

Well, to put it rather simply, the "stuff" of all our drinks truly comes from the

earth.  Snapple's popular array of all-natural (except diet) beverages contain no

preservatives.  We have used real fruit flavours and real tea exclusively since

1972." (Emphasis added).

28.     The front of the Snapple labels contain the words "All natural".

29.     In fact, Snapple is not "All Natural" because Snapple juice drinks, Lime Green

Tea, Kiwi Teawi, Rasberry Tea, Peach Tea, Mint Tea, Lemon Tea, Caffeine Free Lemon

Tea, Lemonade Iced Tea, Lemonade, Pink Lemonade, Super Sour Lemonade, and juice

drinks including, but not limited to, Acai Blackberry, Snapricot Orange, Snapple Apple,

Cranberry Rasberry, Fruit Punch, Grapeade, Kiwi Strawberry, Mango Madness, Rasberry

Peach, Summer Peach, Go Banana, Out-Red-Geous Orange, Summer Peach, Orangeade

and What-a-Melon all contain High Fructose Corn Syrup (HFCS) while claiming to be

"all natural".

30.     HFCS  is a highly processed sugar substitute.

31.     HFCS does not exist in nature and is not "minimally processed," even though its

two (2) major constituents, glucose and fructose, are widely found in nature.  If the

glucose and fructose in Snapple beverages had been obtained from nature, the labeling

13

and advertising would be true. But to describe HFCS as an "All Natural" ingredient is deceptive and unfair to consumers and competitors.

32.     HFCS is created from cornstarch, as opposed to sugar (sucrose), which is produced from sugar cane or beets. HFCS is produced by processing cornstarch to yield glucose, and then processing a significant portion of the glucose to produce fructose. Acids or enzymes are needed to break down cornstarch, which is composed of long chains of glucose molecules, into the simple sugar glucose and then, partially into fructose.

33.     First, the cornstarch is treated with an enzyme, alpha-amylase, to produce shorter chains of sugars called polysaccharides. Alpha-amylase is industrially produced by a bacterium, usually Bacillus.sp. The enzyme is purified and then shipped to HFCS manufacturers.

34.     Second, an enzyme called glucoamylase breaks the sugar chains down even further to yield the simple sugar glucose. Unlike alpha-amylase, glucoamylase is produced industrially by Apergillus, a fungus (Acids may be used by some companies instead of alpha-amylase and glucoamylase).

35.     The third enzyme, gluco-isomerase, coverts glucose to a mixture of about forty-two percent (42%) fructose and fifty to fifty-two percent (50% to 52 %) glucose with some other sugars (or short polymers of glucose) mixed in. While alpha amylase and glucoamylase are added directly to the slurry, pricey glucose-isomerase is packed into columns and the sugar mixture is then passed over it. The sweet liquid with forty-two percent (42%) percent fructose is used as HFCS 42 in some applications.

14

36.    If companies want a higher percentage of fructose in their HFCS, two (2) more steps are necessary. First, a liquid chromatography step takes the mixture to 90 percent fructose. Next, the ninety percent (90%) mixture is back-blended with the original mixture to yield a final concentration of about fifty-five percent (55%) fructose. This mixture is what the industry calls HFCS 55, and is the industry standard.

37.    Isomerization to create HFCS generally takes place in large backed-bed reactors. These are cylindrical columns designed to give good flow distribution and flow control. Isomerization of dextrose to fructose is a thermodynamically controlled reaction.

38.    Although the enzymes used to create HFCS are created from naturally occurring substances, the process described above does not naturally occur in nature. In fact, the process was first developed in the 1970's. Prior to that there was no HFCS in products.

39.    Furthermore, even though the glucose and fructose molecules in HFCS do occur naturally in nature, the molecules in HFCS (and Snapple) were not extracted from natural sources. The molecules in HFCS were created through enzymatically catalyzed chemical reactions in factories.

40.    Briefly summarized, HFCS is manufactured from corn using a complex and multi-step industrial process: starch is extracted from corn; the starch is artificially broken down by acids or enzymes into glucose (dextrose) molecules; and some of the glucose molecules are artificially converted (by enzymes) into fructose. There is nothing natural about this complex process of creating new molecules. This process does not occur in nature or even with minimal processing, and therefore calling it natural is deceptive and misleading.

15

41.   Once the complicated process for creating HFCS is understood, it is clear why describing products that contain HFCS as "All natural" is misleading and deceptive. HFCS is a man-made product and its use in "All Natural" Snapple products is an affirmative misrepresentation that is deceptive and misleading to consumers.

42.   After investigation, it has been determined that the only place where HFCS is mentioned is on the small print that appears on the product ingredients list.  It usually appears as the second listed ingredient, which should mean it is the second greatest-volume ingredient (more than any juice that is in any of the products).

43.   The labeling practices that Defendants engage in are in direct violation of N.J.S.A. 56:8-2.10, and N.J.S.A. 56:8-2.

44.   Like many consumers, Plaintiff relied upon the Snapple labeling under the false assumption that Plaintiff was buying a healthy natural drink.

45.   Upon learning the truth about Snapple, Plaintiff felt mislead as to the how healthy and safe it was to drink Snapple.

## COUNT I

## VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT

46.   Plaintiff re-alleges and incorporates by reference all previous paragraphs as if fully set forth herein.

47.   The above described course of conduct by Defendants violates the New Jersey Consumer Fraud Act, 56:8-1 et seq.

48.   Violations include but are not limited to the following sections of the Consumer Fraud Act:

a. Defendants, acting as aforesaid, violated N.J.S.A. 56:8-2 by the affirmative acts of using or employing unconscionable commercial practices, deception, fraud, false pretense, false promise, and misrepresentation,

b. Defendants, acting as aforesaid, violated N.J.S.A. 56:8-2 by the knowing concealment, suppression, or omission of material facts regarding the nature and operation of said ingredients, with the intent that Plaintiff and members of the class rely upon such concealment, suppression or omission in connection with the sale or advertisement of the Defendant's merchandise.

c. Defendants, acting as aforesaid, violated N.J.S.A. 56:8-2.10 by giving a false or misleading description of the food, and/or omitting information that effectively renders product descriptions as false or misleading, and/or representing products by a definition for which an identity and standard of quality has been established by custom and usage when in fact the products do not conform to the identity or standard being represented.

49.     Defendants, acting as aforesaid, violated N.J.S.A. 56:8-4 by violating 21 CFR 102.33(b), 102.33(c), and 102.33 (d).

50.     Defendants actions include four (4) separate categories of violations of the above said Consumer Fraud Statutes and CFR violations:

a. Improperly describing products as "All Natural" when the products contain HFCS;

b. Claiming the products are "Made from the Best Stuff on Earth";

17

    c. Marketing Rooibus based drinks as "red tea" without indicating that it is an herbal tea and in fact contains no true tea product.

    d. Labeling juice drinks with flavor titles and art work that lead consumers to expect juices that are different than the juice actually contained in the product.

51.    As a direct and proximate cause of Defendants' actions plaintiff and the class have been damaged and suffered ascertainable losses. They were deceived into purchasing Cadbury-Schweppes products that were not as Cadbury-Schweppes represented the product to be.

**COUNT II**

**UNJUST ENRICHMENT AND COMMON LAW RESTITUTION**

52.    Plaintiff re-alleges and incorporates by reference all paragraphs previously set forth as if fully set forth herein.

53.    As a result of Defendants' wrongful and deceptive conduct, Plaintiff and the class have suffered a detriment while Defendant has received a benefit.

54.    Defendants should not be allowed to retain the enormous profits generated from the sale of intentionally and/or recklessly mislabeled products.

55.    Allowing Defendants to retain these profits would offend traditional notions of justice and fair play and induce companies to misrepresent key characteristics of their products in order to increase sales.

56.    Thus, Defendants are in possession of funds which were wrongfully retained from consumers and which should be disgorged as illegally gotten gains.

18

## COUNT III

### BREACH OF EXPRESS WARRANTY

57.    Plaintiff re-alleges and incorporates all paragraphs previously set forth as if fully set forth herein.

58.    Defendant expressly warranted on the label of Snapple products one or more of the following:

   a.  the products are "All natural" when it contained HFCS;

   b.  the products are "red tea" when in fact it does not contain any tea leaves.

   c.  the products are "Made from the Best Stuff on Earth" when the products contain HFCS

   d.  the products are mislabeled as to the juice contained in the product

59.    Plaintiff and class members purchased Snapple products based upon the above said express representations.

60.    Defendants breached its express warranty contained on the label by including HFCS in products labeled as "All Natural".  HFCS is a man-made, highly processed ingredient that is manufactured by using enzymes (or acids) to alter the chemical structure of starch molecules.

61.    Defendants breached the express warranty by using misleading labels that lead consumers to believe that drinks contain juices other than the juice actually contained in the product.

62.    Defendants breached the express warranty by representing that the product is tea when in fact the product does not contain tea.

63.    As a direct and proximate result of Defendants' breach of their express warranty,

Plaintiff and the class have been damaged in that they did not receive the product as specifically represented and/or paid more for the product because they believed it was "All Natural", and/or tea, and/or contained juices other than the juice actually contained in the product.

## COUNT IV

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

64.   Plaintiff re-alleges and incorporates all paragraphs previously set forth as if fully set forth herein.

65.   Defendants impliedly warranted that the products they manufactured and sold were "All Natural" and/or "Made from the Best Stuff on Earth" and/or contained juice from the fruits depicted on the labels of the products and/or contained tea, and in doing so that the products were merchantable and fit for their intended purpose. Defendants did so with the intent to induce Plaintiff and class members to purchase those products.

66.   Defendants breached those implied warranties in that the products were not "All Natural," were not "Made from the Best Stuff on Earth," did not contain the juice depicted on the labels in some instances and did not contain tea.

67.   Had Plaintiff and the members of the class known the true facts, the entities would not have purchased the products or would not have been willing to pay the premium price Snapple charged for the products.

## PRAYER FOR RELIEF

68.   Plaintiff, on Plaintiff's own behalf and on behalf of the class, prays for the following relief:

1.   An Order that this action may be maintained as a class action and that the Plaintiff

20

is an appropriate class representative.

2. An Order appointing the undersigned attorneys as class counsel in this action.

3. A declaration that High Fructose Corn Syrup (HFCS) does not occur in nature and is not minimally processed.

4. A declaration that Defendants unfairly and deceptively mislabeled Snapple Products as being "All Natural" when they are not.

5. A declaration that "red tea" is not tea.

6. A declaration that Defendants unfairly and deceptively mislabeled Snapple "red tea" as being tea when it is not tea.

7. An Order enjoining Defendants from describing products as "All Natural" so long as they contain HFCS.

8. An Order enjoining Defendants from describing products as "red tea" when the products do not contain actual tea and/or indicate that the product is an herbal tea like product.

9. An Order enjoining Defendants from titling and graphically depicting fruit drinks with fruits that are not contained in the form of juice in the product.

10. An Order directing Defendants to disgorge profits obtained by these practices and to pay restitution to the Class.

11. An Order compelling Defendants to reimburse Plaintiff and all class members in an amount equal to their ascertainable loss, which is the equivalent of the amounts they paid for these products.

12. An Order directing Defendants to pay treble damages based upon the above said violations of the New Jersey Consumer Fraud Act and other applicable law.

13. An Order directing Defendants to pay attorneys fees and costs associated with

this litigation.

## JURY DEMAND

Plaintiff demands trial by jury on all issues herein stated.


TORTORETI, TOMES & CALLAHAN, P.C.
Attorney(s) for the Plaintiff

By: _____

PHILIP A. TORTORETI, ESQ.


TUNNEY & HALBFISH, ESQS.
Attorney(s) for the Plaintiff

By: _____

MICHAEL HALBFISH, ESQ.

DATED: 5/18/07

22

## RULE 4:5-1 CERTIFICATION

It is hereby certified that to the best of the undersigned's knowledge the matter in controversy herein is not the subject of any other action pending or contemplated in any court, nor of arbitration proceedings pending or contemplated, and that names of any other party who should be joined in this action are not known.

The foregoing statements are true to the best of my knowledge and belief. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

TORTORETI, TOMES & CALLAHAN, P.C.
Attorney(s) for the Plaintiff

By: _____
PHILIP A. TORTORETI, ESQ.


TUNNEY & HALBFISH, ESQS.
Attorney(s) for the Plaintiff

By: _____
MICHAEL HALBFISH, ESQ.

DATED: 5/18/07

23