UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STACY HOLK, on behalf of herself and all others similarly situated,<br><br>    Plaintiff<br><br>v.<br><br>SNAPPLE BEVERAGE CORPORATION,<br><br>    Defendant | Civil Action No. 3:07-cv-03018-MJC-JJH<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, on behalf of herself and all other similarly situated, by her undersigned counsel, upon knowledge as to her own acts and upon information and belief as to defendant and its actions, brings the following Class Action Complaint against Defendant Snapple Beverage Corporation ("Snapple" or the "Company").

## NATURE OF ACTION

1. This is a class action for declaratory judgment, injunctive relief, reimbursement of losses sustained and damages, alleging that Defendant's marketing, advertising and promotion of its beverages is misleading, and/or inaccurate, and/or deceptive.

2. The unlawful marketing, advertising and promotion includes, but is not limited to, the following:

  a. **"ALL NATURAL"** – Marketing, advertising and promoting its products as "All Natural" when the products contain High Fructose Corn Syrup ("HFCS") and/or other non natural products. The term "All Natural" is regularly used by manufacturers to describe a product that does not have any chemically altered or

#3827441

1

man-made ingredients, and that therefore is a more healthy choice than competing products that contain processed ingredients – and worth a premium price because of that benefit. However, HFCS is a highly processed sugar substitute that does not exist in nature and is not "All Natural." The use by Snapple of the term "All Natural" to describe its products when, in fact, the products are not, is misleading, inaccurate and deceptive.

b. **"FRUIT JUICE" CONTENT**– Marketing, advertising and promoting its beverages as containing a specific fruit juice when, in fact, no such fruit juice is contained in the beverages. For example, Snapple's Acai Blackberry Juice drink contains neither acai berry juice nor blackberry juice. This example is especially significant because acai berry juice is frequently marketed as a premium priced exotic juice that is extremely high in antioxidants. Snapple markets this beverage with depictions of blackberries and round purple berries presumed to be acai berries. In fact, the only juice contained in the products is pear juice. Snapple's unlawful marketing, advertising and promotion of its beverages as containing specific fruit juices when, in fact, no such fruit juices are contained in the beverages, is common across many of Defendant's beverages.

3. Plaintiff brings this action on behalf of herself and on behalf of a class of similarly situated persons, seeking declaratory judgment, injunctive relief, reimbursement of losses and damages.

4. Plaintiff's claims against Defendant include (1) violation of the New Jersey Consumer Fraud Act, N.J.S.A., 56:8-1 *et seq.* (2) Unjust enrichment, (3) Breach of Express Warranty and (4) Breach of the Implied Warranty of Merchantability.

## PARTIES

5. Plaintiff, is and at all times relevant hereto has been, a resident of New Jersey residing at 597 Wildflower Court, Morganville, Marlboro Township, Monmouth County and is over the lawful age of majority. Plaintiff is filing this claim on behalf of herself and all New Jersey persons similarly situated who purchased a Snapple beverage within six years prior to the filing of the case at bar until present, that was marketed, advertised or promoted as being "All Natural," and/or containing specific types of fruit juices different than those actually contained in the Snapple beverage. Specifically excluded from the class is any entity in which Defendant has a controlling interest, and the officers, directors, employees, affiliates, subsidiaries, legal representatives, heirs, successors, and assigns of any such entity, together with any immediate family member of any officer, director or employee of said companies. Also excluded from the Class is any Judge or Magistrate presiding over this Action and members of their immediate families, and any counsel for any Defendant, counsel's staff, and immediate families.

6. Defendant Snapple Beverage Corporation is the manufacturer, seller and distributor of Snapple products that were unlawfully marketed, advertised and promoted to consumers, and which Plaintiff purchased, and as such Defendant is a "person" as defined under the Consumer Fraud Act N.J.S.A. 56:8-1 *et seq.* Snapple Beverage Corporation's principal place of business is located in Rye Brook, New York. Snapple products are sold throughout the United States, including the State of New Jersey, and internationally.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over Plaintiff's claims pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d).

#3827441

8. This is a civil class action that was commenced after February 18, 2005 in which the matter in controversy exceeds $5,000,000, exclusive on interest and costs.

9. Plaintiff is a member of the Class and Subclass and is a citizen of a State different than Defendant.

10. This action does not satisfy the exemptions to jurisdiction found in 28 U.S.C. §§1332(d)(4)(A) and (B).

11. This action does not satisfy the exemptions to jurisdiction found in 28 U.S.C. §1332(d)(3).

12. Venue is proper in this District pursuant to 28 U.S.C. §1391. The acts, events, and conduct complained of herein occurred in substantial part in this District. Defendant has substantial operations within this District and is subject to personal jurisdiction in this District. Defendant does significant business in this District.

## CLASS ACTION ALLEGATIONS

13. Plaintiff brings this action on behalf of herself and all other similarly situated persons in the State of New Jersey, pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff seeks to represent

   a) a Class of all persons in the State of New Jersey who purchased a Snapple beverage marketed, advertised and promoted as "All Natural," but that contained HFCS or other unnatural ingredients, during the six (6) years prior to the commencement of suit until such time as Defendant reforms said practice;

   b) a Subclass of all persons in the State of New Jersey who purchased a Snapple beverage marketed, advertised and promoted as containing specific fruit juice(s) when, in fact, the specific fruit juice(s) was not contained in the beverage, during

the six (6) years prior to the commencement of this suit until such time as Defendant reforms said practice, and

14. The Class and Subclass are so numerous that joinder of all members is impracticable. While the exact number of Class and Subclass members is presently unknown, and can only be ascertained through appropriate discovery, Plaintiff believes the members of the Class and Subclass exceed one thousand (1,000) persons.

15. Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions solely affecting individual members of the Class and Subclass. Among questions of law and fact common to the Class and Subclass are:

    a. Whether HFCS is an "All Natural" ingredient.

    b. Whether use of the phrase "All Natural" to market, advertise and promote beverages containing HFCS is misleading, and/or inaccurate, and/or deceptive.

    c. Whether Defendant expressly and/or impliedly warranted that its beverages contained "All Natural" ingredients.

    d. Whether Defendant breached warranties by using HFCS as an ingredient in beverages marketed, advertised and promoted as "All Natural."

    e. Whether the marketing, advertising and promotion of beverages as containing specific fruit juice(s) when, in fact, the specific fruit juice(s) is contained in the beverages is misleading, and/or inaccurate, and/or deceptive.

    f. Whether Defendant expressly and/or impliedly warranted that its beverages contained specific fruit juice(s) when, in fact, the specific fruit juice(s) was not contained in the beverages.

g. Whether Defendant breached warranties by excluding specific types of fruit juice(s) as ingredients in beverages marketed, advertised and promoted as containing specific types of fruit juice(s).

h. Whether Defendant has been unjustly enriched as a result of its unlawful business practices.

i. Whether Defendant's actions as described above violate the New Jersey Consumer Fraud Act, N.J.S.A., 56:8-1 *et seq*.

j. Whether Defendant should be enjoined from continuing the above-described practices.

k. Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, pay damages and pay treble damages as a result of the above-described practices.

16. Plaintiff's claims are typical of the claims of the members of the Class and Subclass as all members of the Class and Subclass are similarly affected by Defendant's wrongful conduct in violation of the New Jersey Consumer Fraud Act, N.J.S.A., 56:8-1 *et seq*.

17. Plaintiff will fairly and adequately protect the interests of the members of the Class and Subclass and has retained counsel competent and experienced in class action litigation.

18. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by the individual members of the Class and Subclass may be relatively small, the expense and burden of individual litigation make it

impossible for members of the Class and Subclass to individually redress the wrongs done to them. There will be no difficulty in the management of this class action.

## STATEMENT OF FACTS

19. Defendant Snapple manufacturers, distributes, markets, advertises, promotes and sells Snapple beverages throughout the United States, including the State of New Jersey. According to Cadbury-Schweppes, the parent company of Snapple, consumers drank over 150 million gallons of Snapple in 2000 – more than half a gallon for every person in the United States. Snapple's line of beverages includes, among others, iced teas and juice drinks.

20. Snapple maintains a website, www.snapple.com. This website allows consumers all over the United States, including New Jersey, to view marketing, advertising and promotional information pertaining to Snapple's family of products.

21. Snapple, at various times over the course of the past six (6) years, has marketed, advertised and promoted its family of products on television, radio, and in print advertisements.

## "ALL NATURAL"

22. In its marketing and advertising, Snapple promotes many of its iced teas and juice drinks as "All Natural."

23. In fact, Snapple's iced teas and juice drinks are not "All Natural" because beverages, including but not limited to, Lime Green Tea, Kiwi Teawi, Raspberry Tea, Peach Tea, Mint Tea, Lemon Tea, Caffeine Free Lemon Tea, Lemonade Iced Tea, Red Tea - and juice drinks including, but not limited to, Lemonade, Pink Lemonade, Super Sour Lemonade, Acai Blackberry, Snapricot Orange, Snapple Apple, Cranberry Raspberry, Fruit Punch, Grapeade, Kiwi Strawberry, Mango Madness, Raspberry Peach,

#3827441

7

Summer Peach, Go Banana, Out-Red-Geous Orange, Summer Peach, Orangeade, and What-a-Melon all contain HFCS.

24. HFCS is a highly processed sugar substitute.

25. Despite its two (2) major constituents, glucose and fructose, being widely found in nature, HFCS does not exist in nature.

26. HFCS is produced by processing cornstarch to yield glucose, and then processing a significant portion of the glucose to produce fructose.

27. To produce HFCS cornstarch is first treated with a purified enzyme, alpha-amylase, to produce shorter chains of sugars called polysaccharides. Alpha-amylase is industrially produced by a bacterium, usually Bacillus.sp.

28. The polysaccharides (short chains of sugar) are then broken down even further by adding a second enzyme called glucoamylase. Glucoamylase is industrially produced by a fungus, Apergillus. The addition of glucoamylase to the polysaccharides yields the simple sugar glucose.

29. In lieu of using alpha-amylase or glucoamylase, acids may be used in the HFCS production process.

30. A third enzyme, gluco-isomerase, then coverts glucose to a mixture of about 42 percent fructose and 50 to 52 percent glucose with some other sugars (or short polymers of glucose) mixed in. While alpha amylase and glucoamylase are added directly to the slurry, pricey glucose-isomerase is packed into columns and the sugar mixture is then passed over it. The sweet liquid with 42 percent fructose is used as HFCS 42 in some applications.

31. To obtain a higher percentage of fructose in HFCS, two more steps are necessary. First, a liquid chromatography step takes the mixture to 90 percent fructose. Next, the 90

percent mixture is back-blended with the original mixture to yield a final concentration of about 55 percent fructose. This mixture is what the industry calls HFCS 55, and is the industry standard.

32. Although the enzymes used to create HFCS are created from naturally occurring substances, the process described above does not occur naturally. In fact, was not mass produced until the 1970's. Prior to that there was no HFCS in products.

33. Furthermore, the molecules in HFCS (and Snapple) were not extracted from natural sources. Instead, the molecules in HFCS were created through enzymatically catalyzed chemical reactions in factories.

**"FRUIT JUICE" CONTENT**

34. Snapple markets, advertises and promotes its beverages as containing specific fruit juice(s), e.g. Acai Blackberry Juice Drink is marketed, advertised and promoted as containing acai berry juice and blackberry juice.

35. In fact, Snapple's beverages do not contain the specific fruit juice(s) as marketed, advertised and promoted, e.g. Snapple Acai Blackberry Juice Drink does not contain acai berry juice and does not contain blackberry juice.

36. As such, Defendant makes affirmative misrepresentations as to the specified fruit juice(s) contained in its beverages when, in fact, it is primarily a water and High Fructose Corn Syrup (HFCS) drink that does not contain the specified fruit juice(s).

**PLAINTIFF'S PURCHASE OF SNAPPLE**

37. On May 4, 2007, Plaintiff purchased two bottles of Snapple Acai Blackberry Fruit Juice Drink at the Shop Rite supermarket located at 280 Route 9, Morganville, New Jersey. Plaintiff paid $1.09 for each bottle at the time of purchase.

38. At various other times over the course of the preceding six (6) years, Plaintiff purchased many other Snapple beverages previously mentioned, at various locations throughout the State.

39. At the time of each said purchase, Snapple marketed, advertised and promoted its beverages being "All Natural."

40. At the time of each said purchase, Snapple marketed, advertised and promoted beverages as containing specific fruit juice(s) when, in fact, the specific fruit juice(s) was not contained in the beverages.

41. As a result of its marketing, advertising and promotion, Snapple was able to and did charge a premium price for its Snapple beverages – a price higher than that charged for products that are not "All Natural" and/or do not contain a specific type of fruit juice.

42. At the time of each said purchase, Plaintiff paid a premium for beverages that she thought were "All Natural" and/or contained a specific type of fruit juice.

43. However, in contrast to the manner in which Snapple marketed, advertised and promoted its beverages, the beverages purchased by Plaintiff were not "All Natural" and did not contain the specific type of fruit juice as represented.

44. As a result of Defendant's misleading, and/or inaccurate, and/or deceptive marketing, advertising and promotion of its beverages, Plaintiff suffered an ascertainable loss in that she paid a premium for Snapple's beverages but received something less than and different from what was promised and bargained for.

## COUNT I

### VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT

45. Plaintiff repeats and re-alleges each and every allegation above, as if set forth in full herein.

46. The New Jersey Consumer Fraud Act, N.J. Stat. Ann. §56:8-2 (2006) provides:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, [sic] concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice…

47. Defendant's business practices of marketing, advertising and promoting its beverages in a misleading, and/or inaccurate, and/or deceptive manner by misrepresenting its beverages as "All Natural" and/or containing a specific type of fruit juice(s) constitutes the use by Defendant of unconscionable commercial practices, deception, and misrepresentation and, thus constitutes multiple, separate violations of the New Jersey Consumer Fraud Act, N.J.S.A., 56:8-1 *et seq.*

48. In marketing, advertising and promoting its beverages, Defendant made the material misrepresentations and omissions set forth in this First Amended Complaint in New Jersey and elsewhere.

49. Defendant's unlawful conduct set forth in this First Amended Complaint has the capacity to mislead or deceive consumers, including Plaintiff and members of the Class and Subclass.

50. Defendant's unconscionable commercial practices, false promises, misrepresentations and omissions set forth in this Complaint are material in that they relate to matters which reasonable persons, including Plaintiff and members of the Class and Subclass, would attach importance to in their purchasing decisions or conduct regarding the purchase of Snapple beverages.

51. As a result of Defendant's practices as described herein, Plaintiff and members of the Class and Subclass have suffered an ascertainable loss of money or property.

## COUNT II

### UNJUST ENRICHMENT AND COMMON LAW RESTITUTION

52. Plaintiff repeats and re-alleges each and every allegation above, as if set forth in full herein.

53. As a result of Defendant's wrongful and deceptive conduct, Plaintiff and members of the Class and Subclass have suffered a detriment while Defendant has received a benefit.

54. Defendant should not be allowed to retain the enormous profits generated from the sale of products that were unlawfully marketed, advertised and promoted.

55. Allowing Defendant to retain these unjust profits would offend traditional notions of justice and fair play and induce companies to misrepresent key characteristics of their products in order to increase sales.

56. Thus, Defendant is in possession of funds which were wrongfully retained from consumers and which should be disgorged as illegally gotten gains.

## COUNT III

### BREACH OF EXPRESS WARRANTY

57. Plaintiff repeats and re-alleges each and every allegation above, as if set forth in full herein.

58. Defendant expressly warranted in its marketing, advertising and promotion of Snapple beverages, one or more of the following:

    a. that its beverages are "All Natural";

    b. that its beverages contain specific fruit juice(s);

59.  Plaintiff and members of the Class and Subclass purchased Snapple beverages based upon the above said express warranties.

60.  Defendant breached its express warranties by including HFCS in its beverages that it marketed, advertised and promoted as "All Natural." HFCS is a man-made, highly processed sugar substitute that is manufactured by using enzymes (or acids) to alter the chemical structure of starch molecules. HFCS does not exist in nature and is not "All Natural."

61.  Defendant breached its express warranties by marketing, advertising and promoting its beverages as containing specific fruit juice(s) when, in fact, no such specific fruit juice(s) is contained in its beverages.

62.  As a direct and proximate result of Defendant's breach of its express warranties, Plaintiff and members of the Class and Subclass have been damaged in that they did not receive the product as specifically warranted and/or paid a premium for the product because they believed it was "All Natural," and/or contained specific fruit juices.

## COUNT IV

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

63.  Plaintiff repeats and re-alleges each and every allegation above, as if set forth in full herein.

64.  Defendant impliedly warranted that the beverages it manufactured, sold and distributed were "All Natural," and/or contained specific types of fruit juice, and in doing so, that the products were merchantable and fit for their intended purpose. Defendant did so with the intent to induce Plaintiff and members of the Class and Subclass to purchase those products.

65. Defendant breached those implied warranties in that the products were not "All Natural" and did not contain specific fruit juice(s) as marketed, advertised and promoted.

66. Had Plaintiff and the members of the Class and Subclass known the true facts, they either would not have purchased the products or would not have been willing to pay the premium price Defendant charged for the products.

## PRAYER FOR RELIEF

67. Plaintiff, on Plaintiff's own behalf and on behalf of the Class and Subclass, prays for the following relief:

   a. An Order that this action be maintained as a class action and that Plaintiff be appointed class representative.

   b. An Order appointing the undersigned attorneys as class counsel in this action.

   c. A declaration that the use of the phrase "All Natural" in the marketing, advertising and promotion of products containing HFCS is misleading, inaccurate and deceptive.

   d. A declaration that Defendant's use of the phrase "All Natural" in the marketing, advertising and promotion of its beverages violates the New Jersey Consumer Fraud Act, N.J.S.A., 56:8-1 *et seq.*

   e. A declaration that Defendant misleadingly, inaccurately and deceptively marketed its line of beverages as containing specific types of fruit juice when, in fact, the specific fruit juice(s) was not contained in the beverage, in violation of New Jersey Consumer Fraud Act, N.J.S.A., 56:8-1 *et seq.*

f. A declaration that Defendant breached both express warranties and implied warranties of merchantability in marketing, advertising and promoting its beverages as "All Natural."

g. A declaration that Defendant breached both express warranties and implied warranties of merchantability in marketing, advertising and promoting its beverages as containing specific fruit juice(s) when, in fact, they did not.

h. A declaration that Defendant has been unjustly enriched its unlawful practices.

i. An Order enjoining Defendant from marketing, advertising and promoting its beverages as "All Natural" so long as they contain HFCS.

j. An Order enjoining Defendant from marketing, advertising and promoting its beverages as containing specific fruit juice(s) when, in fact, the specific fruit juice(s) is not contained in the beverage.

k. An Order directing Defendant to disgorge profits derived from its unlawful practices and to pay restitution to Plaintiff and all members of the Class and Subclass.

l. An Order compelling Defendant to reimburse Plaintiff and all members of the Class and Subclass in an amount equal to their ascertainable loss as described below.

m. An Order directing Defendant to pay treble damages based upon the above said violations of the New Jersey Consumer Fraud Act, N.J.S.A., 56:8-1 *et seq*.

n. An Order directing Defendant to pay attorneys fees and costs associated with this litigation.

## JURY DEMAND

Plaintiff demands trial by jury on all issues herein stated.

                              TORTORETI, TOMES & CALLAHAN, P.C.
                              150 B Tices Lane
                              East Brunswick, NJ 08816
                              (732) 257-9100

By:          /s/
                PHILIP A. TORTORETI, ESQ.

                              TUNNEY & HALBFISH, ESQS.
                              245 Main Street
                              Woodbridge, New Jersey 07095
                              (732) 636-4900

By:          /s/
                MICHAEL HALBFISH, ESQ.

                              WILENTZ, GOLDMAN & SPITZER P.A.
                              90 Woodbridge Center Drive
                              Woodbridge, NJ 07095
                              (732) 636-8000

By:          /s/
                DANIEL R. LAPINSKI, ESQ.

                              Attorneys for Plaintiff Stacy Holk and the Proposed
                              Class and Subclass

DATED: October 8, 2007