Return Date -- November 19, 2007

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STACY HOLK, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SNAPPLE BEVERAGE CORPORATION, <br><br> Defendant. | Civil Action No. 3:07-cv-03018-MLC-JJH <br><br><br> **ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SNAPPLE BEVERAGE CORPORATION'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

Richard B. Harper (RH 5979)
Maureen P. Reid (MR 2326)
**Baker Botts L.L.P**.
30 Rockefeller Plaza
New York, New York  10112
Tel:    (212) 408-2500
Fax:    (212) 408-2501

Van H. Beckwith (admitted *pro hac vice*)
Allyson N. Ho (admitted *pro hac vice*)
**Baker Botts L.L.P**.
2001 Ross Avenue
Dallas, Texas  75210
Tel:    (214) 953-6500
Fax:    (214) 953-6503

*Attorneys for Defendant*
*Snapple Beverage Corporation*

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

I.      INTRODUCTION ................................................................................................1

II.     STATEMENT OF FACTS ...................................................................................6

        A.      Plaintiff's Putative Class Action..............................................................6

        B.      The Comprehensive Federal Regulatory Scheme for Labeling and
                Advertising Food and Beverages ..............................................................8

III.    ARGUMENTS AND AUTHORITIES.................................................................12

        A.      Legal Standard Governing Motion to Dismiss ........................................12

        B.      Federal Law Preempts Plaintiff's Claims. ..............................................13

                1.      Plaintiff's Claims Are Expressly Preempted by the FFDCA...........14

                2.      Plaintiff's Claims Are Impliedly Preempted Because Congress Has
                        Fully Occupied the Field...............................................................16

                3.      Plaintiff's Claims Are Obstacles To Important Federal Objectives and
                        Therefore Impliedly Preempted. ...................................................18

        C.      Plaintiff's Claims Should Be Dismissed Under the Primary Jurisdiction
                Doctrine...................................................................................................21

        D.      Plaintiff's Consumer Fraud Claim Fails for Multiple Additional Reasons. ............28

                1.      Plaintiff Has Not and Cannot Allege Any "Unlawful Conduct." ...................29

                2.      Plaintiff Has Not and Cannot Allege Any Ascertainable Loss.......................32

                3.      Plaintiff Has Not and Cannot Allege Causality. .............................35

                4.      Plaintiff's Amended Complaint Fails to Satisfy Rule 9(b)..............................37

        E.      The Amended Complaint Fails to State a Claim for Unjust Enrichment. ................38

        F.      The Amended Complaint Fails to State a Claim For Breach of Express or
                Implied Warranty.....................................................................................39

IV.     CONCLUSION...................................................................................................40

# TABLE OF AUTHORITIES

**PAGE**

*Adamson v. Ortho-McNeil Pharm., Inc.*,
    463 F. Supp. 2d 496 (D.N.J. 2006) ...................................................................29

*Animal Legal Defense Fund Boston, Inc. v. Provimi Veal Corp.*,
    626 F. Supp. 278 (D. Mass. 1986) ...................................................................20

*Baraka v. McGreevey*,
    481 F.3d 187 (3d Cir. 2007)...........................................................................12

*Bell Atlantic Corporation v. Twombly*,
    550 U.S.___, 127 S. Ct. 1955 (2007) ........................................................13, 33

*Buck v. Hampton Tp. School Dist.*,
    452 F.3d 256 (3d Cir. 2006)..........................................................................4, 13

*Buckman v. Plaintiffs' Legal Comm.*,
    531 U.S. 341 (2001)......................................................................................15, 19

*Cannon v. Cherry Hill Toyota, Inc.*,
    161 F. Supp. 2d 362 (D.N.J. 2001) ...................................................................35

*Cipollone v. Liggett Group, Inc.*,
    505 U.S. 504 (1992).....................................................................................11, 13

*Cohen v. McDonald's Corporation*,
    808 N.E.2d 1 (Ill. Ct. App. 2004) ...............................................................19, 20

*Cox v. Sears Roebuck & Co.*,
    138 N.J. 2 (N.J. 1994)...................................................................................29

*Cox v. Sears Roebuck & Co.*,
    647 A.2d 454 (N.J. 1994)...............................................................................36

*Dabush v. Mercedes-Benz, USA, LLC*,
    874 A.2d 1110 (N.J. Super. Ct. App. Div. 2005).........................................32, 34

*Dispatch Inc. v. City of Erie*,
    364 F.2d 539 (3d Cir. 1966)..........................................................................13

*Duffy v.  Samsung Elec. Am., Inc.*,
    2007 WL 703197 (D.N.J. Mar. 2, 2007)...........................................................33

*English v. General Electric Co.*,
    496 U.S. 72 (1990) ...................................................................................18

*F. Bender Inc. v. Jos. L. Muscarelle, Inc.*,
    700 A.2d 374 (N.J. Super. Ct. App. Div. 1997) .....................................38

*Far East Conference v. United States*,
    342 U.S. 570 (1952) ...................................................................................22

*Fidelity Fed. Sav. & Loan Assn. v. de la Cuesta*,
    458 U.S. 141 (1982) ...................................................................................16

*Fink v. Ricoh Corp.*,
    839 A.2d 942 (N.J. Super. Ct. Law Div. 2003) ....................................36

*Freightliner Corp. v. Myrick*,
    514 U.S. 280 (1995) ...................................................................................18

*Furnari v. Warden, Allenwood Fed. Correct. Inst.*,
    218 F.3d 250 (3d Cir. 2000) .....................................................................13

*Geier v. American Honda Motor Co., Inc.*,
    529 U.S. 861 (2000) ............................................................................18, 19

*Glassman v. Advantage Auto. Ltd.*,
    2007 WL 471006 (N.J. Super. Ct. App. Div. Feb. 15, 2007) ............33

*Global Naps, Inc. v. Bell Atlantic-New Jersey, Inc.*,
    287 F. Supp. 2d 532 (D.N.J. 2003) .........................................................22

*Great Bay Hotel & Casino v. Tose*,
    34 F.3d 1227 (3d Cir. 1994) .....................................................................21

*Heindel v. Pfizer Inc.*,
    381 F. Supp. 2d 364 (D.N.J. 2004) .........................................................39

*Heller v. Coca-Cola Co.*,
    230 A.D.2d 768 (N.Y. App. Div. 2d Dep't 1996) .............................27, 28

*Hoyte v. Yum! Brands*,
    489 F. Supp. 2d 24 (D.D.C. 2007) ..........................................................40

*Human Tissue Prods. Liability Litigation*,
    488 F. Supp. 430 (D.N.J. 2007) ...............................................................27

- iii -

*International Union of Operating Engineers v. Merck & Co., Inc.,*
    929 A.2d 1076 (N.J. 2007)...........................................................................34, 35

*Jones v. Rath Packing Co.,*
    430 U.S. 519 (1977)..........................................................................................14

*Jorge v. Toyota Motor Ins. Serv., Inc.,*
    2006 WL 2129026 (N.J. Super. Ct. App. Div. Aug. 1, 2006) ...........................32

*Kirtley v. Wadekar,*
    2006 WL 2482939 (D.N.J. Aug. 25, 2006) ......................................................38

*Lum v. Bank of Am.,*
    361 F.3d 217 (3d Cir. 2004)..............................................................................37

*MCI Commc'ns Corp. v. AT&T Co.,*
    496 F.2d 214 (3d Cir. 1974)..........................................................................22, 23

*Malone v. White Motor Corp.,*
    435 U.S. 497 (1978)..........................................................................................14

*N.J. Citizen Action v. Schering-Plough Corp.,*
    842 A.2d 174 (N.J. Super. Ct. App. Div. 2003).................................................36

*Naporano Iron & Metal Co. v. Am. Crane Corp.,*
    79 F. Supp. 2d 494 (D.N.J. 2000) .................................................................37, 38

*Prima v. Darden Rests, Inc.,*
    78 F. Supp. 2d 337 (D.N.J. 2000) .....................................................................39

*Rice v. Santa Fe Elevator Corp.,*
    331 U.S. 218 (1947)..........................................................................................16

*Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.,*
    902 F.2d 222 (3d Cir. 1990)..........................................................................25, 26

*Solo v. Bed Bath & Beyond, Inc.,*
    2007 WL 1237825 (D.N.J. Apr. 26, 2007) .......................................................33

*Talbott v. C.R. Bard, Inc.,*
    63 F.3d 25 (1st Cir. 1995).................................................................................15

*Taliaferro v. Darby Twp. Zoning Bd.,*
    458 F.3d 181 (3d Cir. 2006)..............................................................................12

DAL01:979956.7

*Thiedemann v. Mercedes-Benz USA, LLC,*
    872 A.2d 783 (N.J. 2005)................................................................28, 32, 33

*Turf Lawnmower Repair Inc. v. Bergen Record Corp.,*
    655 A.2d 417 (N.J. 1995)...................................................................................29

*United States ex. rel. Haskins v. Omega Inst., Inc.,*
    11 F. Supp. 2d 555 (D.N.J. 1998) ...................................................................21

*United States v. An Article of Device Diapulse,*
    650 F.2d 908 (7th Cir. 1981) ............................................................................28

*United States v. Western Pacific R.R. Co.,*
    352 U.S. 59 (1956)..............................................................................................21

*VRG Corp. v. GKN Realty Corp.,*
    641 A.2d 519 (N.J. 1994)............................................................................38, 39

*Wanaque Borough Sewerage Auth. v. Twp. of West Milford,*
    677 A.2d 747 (N.J. 1996)...................................................................................38

*Watters v. Wachovia Bank, N.A.,*
    550 U.S. __, 127 S.Ct. 1559 (2007)..................................................................14

*Williams Pipe Line Co. v. Empire Gas Corp.,*
    76 F.3d 1491 (10th Cir. 1996) ....................................................................27, 31

*Williams v. Gerber Prods. Co.,*
    439 F. Supp. 2d 1112 (S.D. Cal. 2006)....................................................3, 31, 40

*Zebersky v. Bed Bath & Beyond, Inc.,*
    2006 WL 3454993 (D.N.J. Nov. 29, 2006) .....................................................36

## STATUTES

5 U.S.C. § 701 ...................................................................................................11

21 U.S.C. § 301..................................................................................................8

21 U.S.C. § 331..................................................................................................17

21 U.S.C. § 332...........................................................................................11, 17

21 U.S.C. § 333..................................................................................................17

21 U.S.C. § 334..................................................................................................17

21 U.S.C. § 336 .................................................................................................11

21 U.S.C. § 337 ....................................................................................11, 15, 17

21 U.S.C. § 343 ....................................................................................10, 14, 17

21 U.S.C. § 378 .................................................................................................17

21 U.S.C. § 393 ...........................................................................................17, 22

28 U.S.C. § 1332 ................................................................................................7

## REGULATIONS

21 C.F.R. § 7 ....................................................................................................11

21 C.F.R. § 10 ..............................................................................10, 11, 15, 23, 24

21 C.F.R. § 100 ................................................................................................11

21 C.F.R. § 101 .....................................................................8, 9, 16, 17, 25, 32

21 C.F.R. § 102 ......................................................................................9, 15, 17

56 Fed. Reg. 60,421 (Nov. 27, 1991) ...............................................................10

58 Fed. Reg. 2302 (Jan. 6, 1993) .....................................................................10

58 Fed. Reg. 2897 (Jan. 6, 1993) .....................................................................25

71 Fed. Reg. 3922 (Jan. 24, 2006) ...................................................................19

## MISCELLANEOUS

Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure
    § 1357 (3d ed. 2004) ....................................................................................13

*Working Agreement Between FTC and Food and Drug Administration*,
    4 Trade Reg. Rep. (CCH) ¶ 9,850.01 (1971) ......................................... 11-12

Defendant Snapple Beverage Corporation ("Snapple") files this Motion to Dismiss in response to Plaintiff's First Amended Class Action Complaint (the "Amended Complaint") and for the same shows as follows:

## I.     INTRODUCTION

On May 18, 2007, Plaintiff filed a putative class action against Snapple, complaining about the labels of certain Snapple tea and juice drinks and purporting to bring claims under New Jersey's consumer-fraud laws.  The complaints ranged from conspicuous labeling of a blackberry juice drink to a Rooibos red tea to Snapple's labeling of "All Natural" and "Made from the Best Stuff on Earth." Nowhere did the original complaint identify the particular Snapple product(s) allegedly bought by Plaintiff.  Plaintiff complained about four alleged misrepresentations on Snapple labels, but in each case, clear factual information on the labels themselves refuted Plaintiff's allegations by plainly stating the ingredients of each Snapple product—allowing each consumer to review the information and make his or her own choice about buying and drinking such beverages.  Importantly, this information is presented in the manner dictated by federal food labeling law.

On July 30, 2007, Snapple filed a motion to dismiss Plaintiff's original complaint.  Rather than respond to the motion, Plaintiff filed her Amended Complaint on October 8, 2007, dropping her claims concerning Snapple's red tea

or "rooibos" beverages and Snapple's description of its beverages as "Made from the Best Stuff on Earth," and attempting to replead the identical labeling allegations as generic "advertising, marketing, and promotion" claims. *Compare Orig. Compl. ¶ 2 with Am. Compl. ¶ 2.*

Plaintiff cannot cure the fatal flaws in her original complaint simply by reciting an incantation over her labeling allegations as "false advertising" claims.[1] In its initial motion to dismiss, Snapple criticized Plaintiff's failure to allege she purchased any particular Snapple beverage. Plaintiff now alleges that she purchased two bottles of a Snapple acai-blackberry juice drink (*Am. Compl. ¶ 37*), but nowhere does Plaintiff mention, much less allege with the specificity required by Rule 9(b), a single piece of "advertising, marketing, or promotion" seen or heard by Plaintiff (either on television, the radio or in a magazine) that was allegedly deceptive or misleading ***before making her product purchase.*** Instead, Plaintiff makes broad, conclusory allegations about generic "advertising" (*see Am. Compl. ¶¶ 20-21*) that only highlight Plaintiff's total failure to allege that a single piece of "advertising" was misleading, if any. Plaintiff's attempt to repackage her

---

[1]     Snapple advises the Court that a related action, *Weiner v. Snapple Beverage Corporation* (Civil Action No.: 07 CIV 8742), which involves virtually identical claims and allegations, is pending against Snapple in the U.S. District Court for the Southern District of New York. Filed on October 10, 2007, the *Weiner* action is purportedly brought on behalf of consumers nationwide "except [in] the State of New Jersey." Snapple will file a motion to dismiss substantially similar to this one in the *Weiner* action within the next 30 days.

labeling claims cannot obscure the fact that the so-called "advertising" she complains about can only be the labels on Snapple drinks that Plaintiff allegedly purchased.[2]

This case was and is about whether Snapple products carry the U.S. Food and Drug Administration (FDA)-mandated labels necessary for each consumer to make his or her own choice about buying the product. If it were any different, then Plaintiff in this alleged "false advertising" case would actually refer to an advertisement (perhaps on television or the radio or in a magazine) that (i) was specifically and materially false, (ii) was seen or heard by Plaintiff *before* her purchase, and (iii) influenced Plaintiff to make the purchase in the first place. Such pleading does not exist for good reason: Plaintiff cannot comply with both Rule 11 and Rule 9(b).

The one passing reference Plaintiff can muster to an "advertisement" is the Snapple website. *Am. Compl.* ¶ 21. But she says nothing about the website other than to simply say "website." She does not say the website constitutes an advertisement, or that the website was viewed by her before her May 2007 product purchase that spawned the first complaint, or that the website contained a single

---

[2]     In the interests of clarity and completeness, Snapple has attached a copy of the label as Exhibit A. The Court may properly consider it because Plaintiff has pleaded words and phrases from the label without attaching it in its entirety for the Court's consideration. *See Williams v. Gerber Prods. Co.*, 439 F. Supp. 2d 1112, 1115 (S.D. Cal. 2006) (considering labels attached to motion to dismiss).

word that was materially misleading. Likely, she does not plead these things because of the same balance between Rules 11 and 9(b). In fact, visitors to Snapple's website find a precise description of the purchased product, including each ingredient from pear juice to natural flavors to water to high fructose corn syrup. *See*, *e.g.*, http://www.snapple.com/products/defaultnonflash.aspx?item=36 (current version of Snapple website) (attached as Exhibit B).[3] A consumer is thus provided with everything necessary to make his or her own informed decision. Moreover, the labels on Snapple bottles on the shelves of New Jersey retailers, including the two Plaintiff claims to have purchased in New Jersey, tell the whole story, namely that each beverage: (i) is sweetened by high fructose corn syrup, and (ii) contains pear juice and natural flavors. This information is presented as federal labeling law, which expressly dictates the precise placement, size, and other parameters of the information (and the use and display of characterizing natural flavors), requires.

Plaintiff's state-law "false advertising" claims ignore this regulatory context, disregard Snapple's compliance with the panoply of rules, regulations, pronouncements, and policy guidance promulgated by the FDA, and attempt an end-run around the agency's authority to regulate, in its discretion and expertise,

---

[3]    This Court may properly consider the attached copy of the webpage because, among other reasons, Plaintiff has expressly referenced Snapple's website in the Amended Complaint. *See Buck v. Hampton Tp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

all aspects of food and beverages within its statutory mandate.  The state law Plaintiff attempts to invoke was designed to deter improper or fraudulent trade practices within the State of New Jersey—not to establish food and beverage labeling requirements for the Nation.  That is the responsibility of the FDA, which exercises its congressionally delegated authority to issue comprehensive, detailed regulations and pronouncements that Snapple conscientiously follows.

The Federal Trade Commission (FTC), which has jurisdiction over food advertising, has "recognized the scientific expertise of the FDA in this area" and "seeks to harmonize its advertising enforcement program to the fullest extent possible" with FDA labeling rules and regulations.  Federal Trade Commission, *Enforcement Policy Statement on Food Advertising* (May 1994).  As a result, the FTC will not take action where, as here, "nutrient content and health claims . . . comply with FDA's regulations."  *Id.*  Plaintiff remains free to address any legitimate concerns (though there are none) to the FDA or petition the agency to issue regulations more in line with her own personal policy preferences (and choices in beverages she buys and drinks).  But Plaintiff's ill-advised attempt to regulate through litigation must be rejected.

Pursuant to Rule 12(b)(6), the Court should dismiss Plaintiff's Amended Complaint for multiple reasons.  First, Plaintiff's claims are preempted.  Second, and alternatively, Plaintiff's claims should be dismissed under the primary

jurisdiction doctrine.  Third, Plaintiff fails to state a consumer-fraud claim for a variety of reasons, including that: (i) the practices alleged are not unlawful; (ii) Plaintiff failed to plead any ascertainable loss; (iii) even if she had, Plaintiff failed to plead the requisite causal connection between the unlawful practices alleged and any ascertainable loss; and (iv) Plaintiff failed to plead her claims with the particularity required by Rule 9(b).  Fourth, Plaintiff's unjust enrichment claim is fatally flawed because she did not confer any "benefit" upon Snapple to her detriment.  Finally, Plaintiff's warranty claims fail for multiple reasons, including failure to plead that any purchased Snapple product was non-merchantable.  For all these reasons, the Amended Complaint must be dismissed in its entirety.

## II.    STATEMENT OF FACTS

### A.    PLAINTIFF'S PUTATIVE CLASS ACTION

Plaintiff initially filed this putative class action in state court seeking treble damages, disgorgement of profits, injunctive relief, declaratory relief, and attorneys' fees purportedly on behalf of "all persons in New Jersey" who in the last six years purchased (i) "an improperly labeled Snapple 'juice drink,'" (ii) "a Snapple or Cadbury Schweppes 'All Natural' beverage that contained [high fructose corn syrup] or other unnatural ingredients," or (iii) a "Snapple 'red tea' beverage." *Orig. Compl.* ¶¶ 5, 49.  Citing a variety of FDA regulations (*id.* ¶¶ 17, 49), Plaintiff alleged that Snapple's "mislabeling" (*id.* ¶¶ 1-2) was actionable under

the New Jersey Consumer Fraud Act (*id.* ¶ 68) and asserted state-law claims for unjust enrichment, breach of the implied warranty of merchantability, and breach of express warranty. *Id.* ¶ 4. To perhaps provide further clarity on her vague class definition, Plaintiff complained about labeling as follows: (i) titling and graphically depicting Snapple's acai-blackberry flavored beverages with fruits that are not contained in the juice in the product; (ii) labeling Snapple "red tea" beverages as "tea" and describing them as "red tea"; and (iii) describing Snapple beverages as "Made from the Best Stuff on Earth" and "All Natural" when they contain the sweetener known as high fructose corn syrup. *Id.* ¶ 68.

On June 29, 2007, Snapple removed the action to this Court under the Class Action Fairness Act of 2005, codified at 28 U.S.C. § 1332(d). About one month later, Snapple filed its initial motion to dismiss Plaintiff's original complaint in its entirety. Snapple argued, among other things, that the FDA had primary jurisdiction over Plaintiff's labeling claims and should have the opportunity to address them in the first instance. Dkt. 19 [*Mot. Dismiss Mem.*] at 17-25. Attaching the labels themselves to the motion, Snapple demonstrated that they conform with the panoply of FDA rules, regulations, and policies. *See*, *e.g.*, *id.* at 22, 35. Snapple asserted that, in all events, Plaintiff's labeling claims failed to state a consumer fraud or any other claim for a variety of reasons, including failure to allege product purchase and failure to satisfy Rule 9(b). *Id.* at 26-40.

Rather than respond to the motion, Plaintiff filed the Amended Complaint on October 8, 2007.  Dropping her claims concerning Snapple's rooibos or "red tea" beverages and "Made from the Best Stuff on Earth," Plaintiff attempts to recast her labeling claims as "advertising" claims, "alleging that Defendant's marketing, advertising, and promotion of its beverages is misleading, and/or inaccurate, and/or deceptive." *Am. Compl.* ¶ 1.  The Amended Complaint does not mention even one specific incident of Snapple's "marketing, advertising, and promotion" that is allegedly misleading.  Nor does Plaintiff plead that she saw or heard any such allegedly false and/or misleading "marketing, advertising, and promotion of" Snapple beverages.  Instead, Plaintiff offers only conclusory allegations concerning Snapple "[m]arketing, advertising and promoting its products as 'All Natural' when the products contain High Fructose Corn Syrup" (*id.* ¶ 2(a)) and "[m]arketing, advertising, and promoting its beverages containing a specific fruit juice when, in fact, no such fruit juice is contained in the beverages" (*id.* ¶ 2(b)).

### B.    THE COMPREHENSIVE FEDERAL REGULATORY SCHEME FOR LABELING AND ADVERTISING FOOD AND BEVERAGES

The Federal Food, Drug, and Cosmetic Act (FFDCA), 21 U.S.C. § 301, *et seq.*, vests the FDA with broad regulatory authority over food and beverage labeling.  Pursuant to this authority, the FDA has promulgated extensive regulations governing all aspects of such labeling, including ingredients (21 C.F.R. §§ 101.4, 101.22 & 101.100), nutrition information (*id.* § 101.9), nutrition content

claims (*id.* §§ 101.13, 101.54, 101.56, 101.60-62, 101.65 & 101.69), and health claims (*id.* §§ 101.14, 101.70-83).

Labeling for beverages containing fruit juice (as bottled by Snapple) is governed by 21 C.F.R. §§ 102.33 and 101.30. These regulations establish detailed rules specifying (i) the use of the term "juice" to describe a beverage containing less than 100 percent juice, *id.* § 102.33(a); (ii) the order of ingredients on beverages containing a blend of juices, *id.* § 102.33(b); (iii) the name of such a product, *id.* § 102.33(c); (iv) the labeling of a beverage in which the juice named on the label "is not the predominant juice," *id.* § 102.33(d)(1-2); (v) the "pictorial representations" that may appear on beverage labels, *id.* § 102.33(f); (vi) the type size that must be used on beverage labels in which one or more juice is made from concentrate, *id.* § 102.33(g)(1); and (vii) the requirement that beverages purporting to contain juice must bear a prominent declaration of the percent juice in the product. *Id.* § 101.30(d). In addition, the FDA has established a definition for "natural flavors" that specifies the type of processing that can be undergone by products labeled as "natural flavors." 21 C.F.R. § 101.22(a)(3). The FDA has also established pervasive requirements governing the use of vignettes of fruit and other characterizing flavors and ingredients and dictates when the use of such graphics will trigger the use of terms such as "naturally flavored," "artificially flavored," and/or "with other natural flavors." *Id.* § 101.22(i).

The FDA has a well-established policy on the use of "all natural" and "100 percent natural."  Under the policy, the FDA will not restrict the use of the term "natural" except for added color, synthetic substances, and flavors, and the FDA views "natural" "as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food."  58 Fed. Reg. 2302, 2407 (Jan. 6, 1993); 56 Fed. Reg. 60,421, 60,466 (Nov. 27, 1991).  The FDA's pronouncements on "natural" are binding on the agency, which cannot take regulatory action against a company that labels its products in conformance with them.  *See* 21 C.F.R. § 10.85(e).  The FDA has consistently maintained its policy on the labeling of products as "all natural."  *See*, *e.g.*, FDA Docket No. 2004P-0009/CP 1 (Dec. 2005) (attached as Exhibit C) (FDA declining to alter its position regarding the use of the term "natural," including a request to restrict the term to products containing unaltered (*i.e.*, minimally processed) food ingredients).

The FFDCA expressly prohibits any deviation from FDA labeling requirements by mandating that "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement for the labeling of food [and beverages] of the type required by [various sections of the FFDCA] that is not identical to the requirement of such section."  21 U.S.C. § 343-1(a)(2).  "State

requirement" means "any statute, standard, regulation, or other requirement that is issued by a State," 21 C.F.R. § 100.1(b)(5), and encompasses common-law duties. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992).

The FFDCA does not provide either an express or an implied private right of action to enforce violations of the statute or regulations promulgated thereunder. 21 U.S.C. § 337(a). Rather, "all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States." *Id.* The FDA is authorized to issue "suitable written notice or warning," request a voluntary recall of unlawful products, and/or seek an order seizing or enjoining the sale of unlawful products. 21 U.S.C. §§ 332, 334, 336; 21 C.F.R. § 7.40. Any individual can file a petition requesting the FDA to issue a regulation, amend a current regulation, or take other appropriate action. 21 C.F.R. § 10.30(e). Once the FDA has made a final decision about what action, if any, to pursue, an individual aggrieved by that decision can seek judicial review. 5 U.S.C. § 701.

The Federal Trade Commission ("FTC") has primary responsibility over food and beverage advertising under the Federal Trade Commission Act ("FTC Act"). Since 1954, the FTC and the FDA have operated under a Memorandum of Understanding, under which the FTC has assumed primary responsibility for regulating food advertising, while the FDA has taken primary responsibility for regulating food labeling. *See Working Agreement Between FTC and Food and*

*Drug Administration*, 4 Trade Reg. Rep. (CCH) ¶ 9,850.01 (1971). "Recogniz[ing] the scientific expertise of the FDA in this area," the FTC has emphasized "the importance of consistent treatment of nutrient content and health claims in food advertising and labeling and seeks to harmonize its advertising enforcement program to the fullest extent possible." Federal Trade Commission, *Enforcement Policy Statement on Food Advertising* (May 1994). The FTC "has traditionally accorded great weight to FDA's scientific determinations in matters of nutrition and health and will continue to do so." *Id.* While the FTC is authorized to investigate and/or take any other appropriate enforcement action regarding "unfair or deceptive acts or practices," the FTC has stated that it generally will not take action where the product claims "comply with FDA's regulations." *Id.*

## III.   ARGUMENTS AND AUTHORITIES

### A.   LEGAL STANDARD GOVERNING MOTION TO DISMISS

In deciding a motion to dismiss, this Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom [viewing] them in the light most favorable to the plaintiff." *Taliaferro v. Darby Twp. Zoning Bd.,* 458 F.3d 181, 188 (3d Cir. 2006). The Court, however, does not have to accept "unsupported conclusions," "unwarranted inferences," or legal conclusions that Plaintiff has couched as factual allegations. *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007). "[M]ore than labels and

conclusions" are required, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombly*, 550 U.S.___, 127 S. Ct. 1955 (2007) (citations omitted). A complaint must contain "enough facts to state a claim to relief that is plausible on its face" in order to withstand a motion to dismiss. *Id.* Otherwise, the complaint must be dismissed. *Id.*

"In evaluating a motion to dismiss," this Court "may consider . . . any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck.*, 452 F.3d at 260 (quoting 5B CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (3d ed. 2004)). This Court may therefore consider federal governmental documents (and statements made therein) that are implicated by and central to Plaintiff's claims. *See id.*[4]

## B.    FEDERAL LAW PREEMPTS PLAINTIFF'S CLAIMS.

The preemption doctrine arises from the constitutional rule that the laws of the United States are the supreme law of the land, "any Thing in the Constitution or Law of Any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2; *Cippollone*, 505 U.S. at 516. "The purpose of Congress is the ultimate touchstone"

---

[4]    *See also Furnari v. Warden, Allenwood Fed. Correct. Inst.*, 218 F.3d 250, 255 (3d Cir. 2000) (proper for court to consider decisions of administrative agencies in ruling on motion to dismiss); *Dispatch Inc. v. City of Erie*, 364 F.2d 539, 543 (3d Cir. 1966) (district court should take judicial notice of Federal Communications Commission bulletin and agency position).

of preemption analysis. *Malone v. White Motor Corp.*, 435 U.S. 497 (1978). Congressional intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Jones v. Rath Packing Co.,* 430 U.S. 519 (1977). The Supreme Court recently reaffirmed that preemption prevents "the burdens and undue duplication state controls could produce" where Congress has determined that "confusion would necessarily result from control possessed and exercised by two independent authorities." *Watters v. Wachovia Bank, N.A.*, 550 U.S. __, 127 S.Ct. 1559, 1568 (2007). These principles require dismissal here.

1.    Plaintiff's Claims Are Expressly Preempted by the FFDCA.

The FFDCA expressly preempts any state requirement—including one imposed by a tort suit—that is "not identical" to certain requirements imposed by federal labeling regulations.  21 U.S.C. § 343-1.[5]  Of most relevance is section 343-1(a)(2), which specifically preempts state requirements "not identical" to the ingredient labeling provisions of section 343-1(i)(2), and section 343-1(a)(3), which specifically preempts state requirements "not identical" to the common or usual name provisions of section 343(i)(1) and the artificial labeling provisions of section 343(k).  For example, the FDA has established a "common" or "usual" name regulation for juice beverages that specifies the name that must appear on

---

[5]    For the Court's convenience, an Index of Regulations is attached as Exhibit D, which contains the governing regulatory requirements that Snapple follows.

such products.  21 C.F.R. § 102.33.  Plaintiff complains about Snapple's use of "acai blackberry" to name its beverages, but she does not plead or suggest that Snapple has not labeled its products consistent with these regulations, nor could she because Snapple conforms its labels to FDA rules.

Moreover, the FDA has express enforcement authority, *see* 21 U.S.C. § 337(a), and the FFDCA expressly precludes a private right of action, *see Buckman v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001).  Plaintiff's simple and appropriate remedy is to complain to the FDA as the law allows.  *See* 21 C.F.R. § 10.30(e).[6]  As one court explained in a similar context, "[t]o avoid the possibility of disuniform treatment, Congress placed enforcement authority in the FDA. . . . Centrally situated and with the requisite expertise, the FDA is in the best position to determine whether the provisions of the [statute] have in fact been violated and to ensure that the law is applied in a uniform manner."  *Talbott v. C.R. Bard, Inc.*, 63 F.3d 25, 29-30 (1st Cir. 1995).  "Given the FDA's central enforcement role, the preemptive scope" of  the FFDCA "becomes clear," and bars Plaintiff's roundabout attempt to impose requirements that are "not identical" to the FDA's "common" or "usual" name regulations.  *See id.* at 30.

---

[6]    This is exactly what the Center for Science in the Public Interest (CSPI) has done in petitioning the FDA to take action against Coca-Cola's "Fuze" line of beverages.  *See* http://www.cspinet.org/new/200709261.html.  CSPI's petition is further proof, were any needed, that the proper venue for Plaintiff's complaint is the FDA.

So too with Plaintiff's claims regarding the "characterizing" ingredients in Snapple products—*i.e.*, the primary, recognizable flavors such as acai and blackberry. *See* 21 U.S.C. § 343-1(a)(3),(4). The FDA has established definitions for artificial flavors and natural flavors, 21 C.F.R. §§ 101.22(a)(1),(3), and detailed requirements for identifying the presence of flavors when the label depicts the presence of characterizing ingredients through vignettes or other means. 21 C.F.R. § 101.22(i). Plaintiff does not and cannot allege any violation of these regulations because Snapple follows them. Accordingly, the FFDCA expressly preempts Plaintiff's claims concerning the labeling of flavors as ingredients, artificial flavors, and the common or usual names for foods.

> 2. Plaintiff's Claims Are Impliedly Preempted Because Congress Has Fully Occupied the Field.

Even without explicit preemptive language, Congress can impliedly preempt state-law requirements when it so thoroughly occupies an area of the law "'as to make reasonable the inference that Congress left no room for the States to supplement it.'" *Fidelity Fed. Sav. & Loan Assn. v. de la Cuesta*, 458 U.S. 141, 153 (1982) (*quoting Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). Here, the sheer enormity of the federal statutory and administrative framework indicates Congress' intent to fully occupy the labeling field—and thus impliedly preempt Plaintiff's claims.

The FFDCA includes myriad provisions setting forth the requirements necessary for compliance, as well as the potential consequences of noncompliance, within the comprehensive federal regulatory scheme.[7]   To implement this framework and provide for uniform national enforcement, Congress delegated broad authority to the FDA to promulgate such rules and regulations as may be necessary to promote and protect public health.   21 U.S.C. § 393.   Notably, Congress vested the FDA with authority to promulgate regulations to ensure that food and beverages are "properly labeled."   21 U.S.C. § 393(b)(2)(A).   The FDA, in turn, has issued scores of regulations that pertain specifically to labeling, from general provisions concerning misbranding to specific labeling requirements.   *See generally* 21 C.F.R. §§ 101.1-.108, 102.5-.57; *see also* pp. 8-11, *supra*.

In addition, Congress has vested the FDA with express authority to enforce the FFDCA, 21 U.S.C. § 337(a), and given the FDA a wide-ranging arsenal of weapons to combat violations—including authority to obtain an ex parte court order for the seizure of goods subject to the Act, *see* 21 U.S.C. § 334, to initiate proceedings in a federal district court to enjoin continuing violations of the FFDCA, *see* § 332, and to request a U.S. Attorney to bring criminal proceedings

---

[7]      *See*, *e.g.*, 21 U.S.C. § 343(a) (defining "misbranding"); 21 U.S.C. § 331(a) (prohibiting "misbranding"); 21 U.S.C. § 343-1 (providing for "National uniform nutrition labeling"); 21 U.S.C. § 333(a) (listing applicable penalties for "misbranding"); 21 U.S.C. § 334(a) (making misbranded food and beverages subject to seizure); 21 U.S.C. § 378 (providing for the referral of misbranded products to the FTC).

against violators, *see* § 333.  Federal law has fully occupied the field and there is no room for Plaintiff's thinly veiled attempt to regulate by litigation.

> 3.   Plaintiff's Claims Are Obstacles To Important Federal Objectives and Therefore Impliedly Preempted.

State-law claims are also impliedly preempted when they "stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *English v. General Electric Co.*, 496 U.S. 72, 79 (1990). "Obstacle" preemption applies even though a statute contains an express preemption clause.  *Freightliner Corp. v. Myrick*, 514 U.S. 280, 288-289 (1995). In *Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861, 874-75 (2000), the Supreme Court affirmed that preemption does not "require a formal agency statement of pre-emptive intent as a prerequisite to concluding that a conflict exists"—*i.e.*, that preemption can (and must) be inferred from a comprehensive federal regulatory scheme.  The Supreme Court held that because federal standards concerning airbags "deliberately provided the manufacturer with a range of choices among different passive restraint devices," common-law claims seeking to "restrict that range of choices" were preempted "as an obstacle to the accomplishment and execution of important . . . [federal] objectives."  *Id.* at 881.

The logic of *Geier* compels the same conclusion here.  The FDA is charged with overseeing a complex statutory scheme that requires the agency to balance important and sometimes competing policy objectives—a balance that might easily

be upset by allowing mislabeling claims to proceed under state tort law. *See Buckman*, 531 U.S. at 348 (holding that tort claims based on misrepresentations made in the FDA drug-approval process would "disrupt the balancing of federal statutory objectives"). In the similar context of drug labeling, the FDA has taken the position that given "the comprehensiveness of FDA regulation of drug safety, effectiveness, and labeling under the [FFDCA]," state-law tort suits are preempted because they "threaten FDA's statutorily prescribed role as the expert Federal agency responsible for evaluating and regulating drugs." 71 Fed. Reg. 3922, 3933-36, 3967-69 (Jan. 24, 2006). That reasoning applies just as forcefully to Plaintiff's request for damages and injunctive relief based on alleged product "mislabeling." As in *Geier*, Plaintiff's claims, if accepted, would obstruct the federal objectives of consistency and uniformity by imposing new requirements and state-law standards.

Courts have regularly dismissed claims brought under state consumer-fraud statutes on preemption grounds where, as here, such litigation would undermine the objectives of a comprehensive federal regulatory scheme. For example, in *Cohen v. McDonald's Corporation*, 808 N.E.2d 1, 7 (Ill. Ct. App. 2004), the plaintiff (Cohen) alleged that McDonald's Happy Meals were "mislabeled" because they did not include "Nutrition Facts." The court rejected that argument, explaining that the FFDCA specifically exempts restaurants from FDA labeling requirements. *Id.* Accordingly, to the extent plaintiff's consumer-fraud suit sought

to impose requirements "that are different from federal law," it was preempted.  *Id.*
Emphasizing that "[t]his is a state court, not the FDA," the court declined to "fill
holes in the [FFDCA] where the federal government has yet to do so."  *Id.*

Similarly, in *Animal Legal Defense Fund Boston, Inc. v. Provimi Veal Corp.*,
626 F. Supp. 278, 284 (D. Mass. 1986), the plaintiff ("ALDF") sued a Wisconsin
veal producer (Provimi) alleging that Provimi "ought to tell consumers that its veal
might be unhealthful because it comes from calves that are fed antibiotics" and that
"not telling [consumers] is unfair and deceptive."  The district court held that
ALDF's consumer-fraud claims were preempted by a "comprehensive federal
scheme regulating the labeling, packaging and marketing of meat" that made clear
"Congress' intent to occupy the field . . . and to direct the State to leave all
regulatory activity in that area to the federal government . . . ."  *Id.* at 284.
ALDF's lawsuit was "an inappropriate remedy" and dismissal was required.  *Id.* at
281.

Here, Congress has assigned responsibility for making judgments (and
enforcing them) about labeling to the regulatory expertise of the FDA, not to the
vagaries of the tort system.  Given (1) the FFDCA's express preemption
provisions, (2) the comprehensiveness of the federal regulatory framework and the
FDA's express enforcement authority, and (3) Congress's important objectives of
national uniformity and consistency in regulating food and beverage labeling,

Plaintiff's state-law mislabeling claims—no matter how Plaintiff attempts to recast them—are preempted and must be dismissed.

### C. PLAINTIFF'S CLAIMS SHOULD BE DISMISSED UNDER THE PRIMARY JURISDICTION DOCTRINE.

Notwithstanding Plaintiff's efforts to recast them, her remaining claims against Snapple involve the "resolution of issues which, under a regulatory scheme, have been placed within the special competence" of federal agencies and therefore warrant dismissal under the primary jurisdiction doctrine. *See United States v. Western Pacific R.R. Co.*, 352 U.S. 59, 63-64 (1956) (noting that the "special competence" or "expertise" an agency brings to bear is not merely technical but extends to the policy judgments needed to implement an agency's mandate); *Greate Bay Hotel & Casino v. Tose*, 34 F.3d 1227, 1230 n.5 (3d Cir. 1994) (same). Dismissal of Plaintiff's claims would further important public policy goals by promoting "consistency and uniformity" of decision, encouraging judicial deference to administrative agencies that are "uniquely qualified to resolve certain complexities that are outside the conventional experience of the courts," and serving judicial economy by "obviating the need for court intervention." *United States ex. rel. Haskins v. Omega Inst., Inc.*, 11 F. Supp. 2d 555, 560 (D.N.J. 1998).

Indeed, it is difficult to imagine claims that more obviously should be resolved by the FDA, and not by litigation, than Plaintiff's. Plaintiff prominently

lists the question "[w]hether [high fructose corn syrup] is an 'All Natural' ingredient" (*Am. Compl.* ¶ 15(a)) first among the questions of law and fact allegedly common to the putative class; she seeks to enjoin Snapple "from marketing, advertising, and promoting its beverages as containing specific fruit juice(s) when, in fact, the specific fruit(s) is not contained in the beverage" (*id.* ¶ 67(j)) and from "marketing, advertising, and promoting its beverages as 'All Natural' so long as they contain [high fructose corn syrup]" (*id.* ¶ 67(i)). Plainly, Plaintiff's claims involve "technical or policy considerations" that fall squarely within the FDA's "field of expertise" and should be resolved by the FDA in the first instance. *See Global Naps, Inc. v. Bell Atlantic-New Jersey, Inc.*, 287 F. Supp. 2d 532, 548-49 (D.N.J. 2003) (*quoting MCI Commc'ns Corp. v. AT&T Co.*, 496 F.2d 214, 220 (3d Cir. 1974)). Plaintiff cannot avoid this conclusion no matter how she attempts to repackage her labeling claims.

The Supreme Court has instructed that in "cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over." *Far East Conference v. United States*, 342 U.S. 570, 574-75 (1952). Congress has entrusted the FDA with broad authority to promulgate and enforce such rules and regulations pertaining to food and beverage labeling as the agency deems necessary to protect consumers and their safety. *See* 21 U.S.C. § 393. The FDA thus has "primary jurisdiction to make the initial

determination on issues within its statutory mandate," 21 C.F.R. § 10.25(b), and this Court cannot substitute its judgment for that of the FDA. *MCI Commc'ns Corp.*, 496 F.2d at 220. "Recogniz[ing] the scientific expertise of the FDA in this area," the FTC has likewise acknowledged "the importance of consistent treatment of nutrient content and health claims in food advertising and labeling and seeks to harmonize its advertising enforcement program to the fullest extent possible." Federal Trade Commission, *Enforcement Policy Statement on Food Advertising* (May 1994). The FTC "has traditionally accorded great weight to FDA's scientific determinations in matters of nutrition and health and will continue to do so." *Id.* As a result, the FTC generally defers to FDA determinations and will not take action under Sections 5 and 12 of the FTC Act where the product claims "comply with FDA's regulations." *Id.*

Plaintiff, however, attempts to bypass the FDA's regulatory authority over issues that fall squarely within the FDA's field of expertise and should be resolved by the FDA in the first instance. For example, the FDA has recently and repeatedly affirmed its position regarding the use of the term "natural." The FDA will not restrict the use of the term "natural" except for added color, synthetic substances, and flavors, and the agency views "natural" "as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be

in the food." *See* pp. 9-10, *supra*.  If Plaintiff does not agree with the FDA's position, this lawsuit is not the proper recourse.  Instead, Plaintiff's appropriate remedy is to petition the FDA to issue a regulation, amend a current regulation, or take any other appropriate action.  21 C.F.R. § 10.30(e).

That is precisely the path followed by the Sugar Association in filing a citizen petition on this issue that is currently pending before the FDA regarding the term "natural."  *See* FDA Docket No. 2006P-0094 (Feb. 2006) (attached as Exhibit E).  Indeed, Plaintiff presents issues of law and fact in this lawsuit that are virtually identical to those raised by the Sugar Association in its petition.  *Compare id.* (asking the FDA to adopt a "minimally processed" definition of "natural"), *with Compl.* ¶¶ 24, 25 (asserting that high fructose corn syrup is "highly processed" and "does not exist in nature").  Rather than seeking to regulate through litigation, the primary jurisdiction doctrine requires Plaintiff to avail herself of the regulatory framework established by Congress in petitioning the FDA for a regulation along the lines she prefers, so that the agency can appropriately bring its expertise and regulatory authority to bear on this complex issue and balance the many different interests and competing considerations at stake.  This is precisely what the FDA has publicly declared as its role and obligation on this precise issue regarding use of the term natural.  *See* Ex. C (FDA denial of petition) (FDA stressing that "there

are many facets of this issue that the agency will have to carefully consider" before undertaking any change).

Similarly, Plaintiff complains about Snapple's depictions of acai berries and blackberries when the juice drink contains pear juice and natural acai and blackberry flavors. *Am. Compl.* ¶¶ 34-36. Setting aside momentarily that Plaintiff does not identify any specific "advertising" that uses such graphics, it nonetheless would be consistent with the FDA's longstanding approval of graphics that depict characterizing flavor ingredients such as blackberry and acai flavors where, as here, the characterizing flavors, but not necessarily the juice, are present in the food. *See, e.g.*, 21 C.F.R. § 101.22(i); 58 Fed. Reg. 2897, 2921-2 (Jan. 6, 1993) (expressly declining to limit depictions of fruit to those fruit juices specifically found in a product). The FDA has expressly approved vignettes on juice-beverage labels that contain only the natural or artificial flavor of the represented fruit. *Id.* at 2897, 2922. Plaintiff does not plead or suggest that the graphics would depart from FDA rules and regulations, nor could she as Snapple conforms with them. If Plaintiff is dissatisfied with the existing regulatory framework, the appropriate recourse is to petition the FDA to issue new regulations or amend existing ones— not to file this lawsuit.

The leading Third Circuit case on primary jurisdiction confirms that dismissal of Plaintiff's claims would be particularly appropriate here. *See Sandoz*

*Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 232 (3d Cir. 1990). The issue in *Sandoz* involved whether an ingredient in cough syrup should be labeled as an "active" or "inactive" ingredient as those terms were defined in FDA regulations. *Id.* at 230-31. The plaintiff brought an action under the Lanham Act, alleging (like Plaintiff) that Vicks was making false and deceptive statements, and sought damages and an injunction. *Id.* at 223. Vicks argued that the plaintiff's false advertising claim was really just a mislabeling claim in disguise, and that while plaintiffs' allegations might create a cause of action for the FDA, they did not give rise to a private cause of action under the Lanham Act. *Id.* at 230.

The Third Circuit agreed with Vicks, noting that accepting the plaintiff's position "would require us to usurp administrative agencies' responsibility for interpreting and enforcing potentially ambiguous regulations." *Id.* The court noted that the plaintiff was "free to petition the FDA to investigate these alleged labeling violations," and made clear that merely because the plaintiff "has been unable to get a quick response from the FDA," that "does not create a claim for [plaintiff] under the Lanham Act." *Id.* at 231 n.10. Under *Sandoz*, that the FDA has not taken action to Plaintiff's liking is no reason for a court to supplant the FDA from its proper role. To the contrary, deferring to the FDA would serve the important goal of applying the agency's expertise and policy judgments to the issues

presented while conserving judicial resources.  *See*, *e.g.*, *Williams Pipe Line Co. v. Empire Gas Corp.*, 76 F.3d 1491, 1496 (10th Cir. 1996).

This Court's recent decision in *Human Tissue Prods. Liability Litigation*, 488 F. Supp. 430 (D.N.J. 2007), is to the same effect.  There, plaintiffs sought an order requiring defendants to give notice to "unnamed class members of the need to have a blood test" in light of "potential dangers arising from their receipt of unscreened human tissue."  *Id.* at 432.  This Court declined plaintiffs' request, noting that FDA regulations "set forth specific recall procedures" and "require the FDA to evaluate the precise issue raised by Plaintiffs' motion. . . ."  *Id.* at 432-33.  "As these regulations show," this Court concluded, "Congress clearly vested the FDA with the regulatory authority to assess and manage the communications regarding product recalls."  *Id.* at 433.  Because "Plaintiffs are essentially asking the Court to perform tasks traditionally relegated to the FDA," this Court denied the motion and directed plaintiffs, "should they wish, to file a 'citizens' petition' with the FDA under 21 C.F.R. § 10.30."  *Id.*

The court in *Heller v. Coca-Cola Co.*, 230 A.D.2d 768 (N.Y. App. Div. 2d Dep't 1996), reached a similar conclusion.  Heller brought consumer fraud and unjust enrichment claims against soft-drink manufacturers on behalf of consumers who purchased soft drinks containing a low-calorie sweetener (Aspartame) that Heller alleged had become spoiled, stale, or tasteless due to the sweetener's limited

shelf life. *Id.* The court held that the matter should be referred to the FDA to "utilize the special expertise of the FDA . . . ." *Id.* at 769-70. The Seventh Circuit's decision in *United States v. An Article of Device Diapulse*, 650 F.2d 908 (7th Cir. 1981), is similarly instructive. In *Diapulse*, the federal government brought an action to seize certain medical devices, arguing they were ineffective for the claims in their labeling. *Id.* at 909. The court held that the legality of the labeling was for the FDA to determine and dismissed the case on primary jurisdiction grounds. *Id.* at 910. This Court should reach the same conclusion here and dismiss Plaintiff's claims. This matter falls squarely within the FDA's authority and expertise, and referral is particularly appropriate given the FTC's traditional deference to the FDA in such matters.

### D. PLAINTIFF'S CONSUMER FRAUD CLAIM FAILS FOR MULTIPLE ADDITIONAL REASONS.

Plaintiff's consumer fraud claim is not only preempted and/or subject to dismissal under the primary jurisdiction doctrine, but also fails for the independent reason that Plaintiff fails to plead and cannot prove any actionable misrepresentation. To state a CFA claim, Plaintiff must allege each of three elements: (1) unlawful conduct, (2) an ascertainable loss, and (3) a causal nexus between the two. *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 790 (N.J. 2005). Plaintiff cannot satisfy a single prong of this test, much less meet all three requirements. The best Plaintiff can do is point to Snapple's website, but

even there she does not allege (much less with requisite Rule 9(b) particularity) that she saw the website before purchase, that it contained anything false or misleading, or that she suffered any ascertainable loss because of it.  For all these additional reasons, Plaintiff's consumer fraud claim must be dismissed.

        1.     Plaintiff Has Not and Cannot Allege Any "Unlawful Conduct."

The New Jersey Supreme Court has made clear that "[t]o constitute consumer fraud . . . the business practice in question must be 'misleading' and stand outside the norm of reasonable business practice in that it will victimize the average consumer."  *Turf Lawnmower Repair Inc. v. Bergen Record Corp.*, 655 A.2d 417, 430 (N.J. 1995); *see also Adamson v. Ortho-McNeil Pharm., Inc.*, 463 F. Supp. 2d 496, 503-504 (D.N.J. 2006) (granting a motion to dismiss putative consumer class action targeting drug advertisements because, among other reasons, the statements alleged to be misleading under the CFA were objectively true).  Accordingly, a violation of the CFA requires at a minimum proof of an "unlawful practice," meaning there must be an affirmative act, a knowing omission, or a violation of a regulation.  *See Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (N.J. 1994).  Plaintiff cannot satisfy that threshold requirement.

Nowhere does Plaintiff mention, much less allege with the specificity required by Rule 9(b), a single piece of "advertising, marketing, or promotion" seen or heard by her (either on television, the radio or in a magazine) before her

purchase.  Nowhere does Plaintiff allege that such advertising, if any, was materially false or misleading.  Instead, Plaintiff makes broad, conclusory allegations about generic "advertising" (*see Am. Compl.* ¶¶ 20-21) that only highlight Plaintiff's total failure to allege that a single piece of such "advertising" was materially false or misleading.  Such pleading does not exist for good reason: Rule 11 forbids it.

The one passing reference to an "advertisement" Plaintiff can muster is Snapple's website.  *See Am. Compl.* ¶ 21.  But even there, Plaintiff says nothing about the website other than merely asserting it exists.  She does not say the website constitutes an advertisement, nor that it contains a single word that is materially misleading.  Nor could she, as the website itself refutes any such claim. Indeed, the website fully discloses the ingredients in Snapple's juice drinks, thereby informing any reasonable consumer of everything he or she needs to know before making a purchasing decision based on his or her own personal preferences—including the acai-blackberry juice drink of which Plaintiff complains.  *See*, *e.g.*, Ex. B (Snapple webpage).  Thus, the one "advertisement" Plaintiff mentions by name tells precisely the truth and exactly as the FDA requires.

Plaintiff's vague complaint that the Snapple beverages she purchased "do not contain the fruit depicted" (*see Am. Compl.* ¶¶ 2(b), 35, 40) is, if possible, even

more flawed. For one thing, Plaintiff does not allege any specific piece of "advertising, marketing, or promotion" she heard or saw before making her purchase that contains such a claim—and in all events, as discussed above, FDA regulations expressly endorse Snapple's approach. Moreover, the "mere depiction of fruit . . . is not a specific affirmative representation that the product contains those fruits." *Gerber*, 439 F. Supp. 2d at 1116 (rejecting claim that graphics of oranges, peaches, strawberries, cherries, pineapple and other berries created confusion and misrepresented the contents of a product that contained only grape juice), *appeal docketed*, No. 06-55921 (9th Cir. June 30, 2006).

In *Williams*, the court dismissed on Rule 12(b)(6) grounds claims virtually identical to Plaintiff's here, holding that "no reasonable consumer upon review of the packaging as a whole would conclude" that the "Fruit Juice Snacks" at issue there "contain[ ] the juice from the actual and fruit-like substances displayed on the packaging *particularly where the ingredients are specifically identified*." *See id.* (emphasis added). Where, as here, "a consumer can readily and accurately determine the nutritional value and ingredients of a product," a consumer could not be "deceived by depictions of fruit and fruit-like substances" in the marketing or advertising of the product into making an uninformed choice. *See id*; *see also* Ex. A (label). So too with Plaintiff's claims regarding high fructose corn syrup, which

likewise plainly appears on the label in the ingredient list, just as the FDA's regulations require. *See id.*; 21 C.F.R. § 101.4(a).

Reasonable consumers will read the entirety of a label if they are concerned about a product's ingredients. With respect to each "category" of Plaintiff's allegations, Snapple's labels tell the whole story, namely: (i) that each beverage is sweetened by high fructose corn syrup, and (ii) that each acai-blackberry beverage contains pear juice and natural flavors. As discussed above, this information is presented in the manner compliant with and dictated by federal labeling law. Plaintiff's CFA claim therefore fails at the threshold because she has not, and cannot, plead or prove any "unlawful conduct."

       2.     Plaintiff Has Not and Cannot Allege Any Ascertainable Loss.

Even if Plaintiff could allege unlawful conduct by Snapple—which she cannot—her CFA claims would fail because she has not, and cannot, pled specific facts showing that she suffered an "ascertainable loss," *i.e.*, "a cognizable and calculable claim of loss due to the alleged CFA violation." *See Thiedemann*, 872 A.2d at 786, 793; *Jorge v. Toyota Motor Ins. Serv., Inc.*, 2006 WL 2129026, *3-4 (N.J. Super. Ct. App. Div. Aug. 1, 2006). Plaintiff's loss must rest upon an objectively reasonable basis, *Dabush v. Mercedes-Benz, USA, LLC*, 874 A.2d 1110, 1120 (N.J. Super. Ct. App. Div. 2005), and cannot be hypothetical or

illusory. *Glassman v. Advantage Auto. Ltd.*, 2007 WL 471006, at *3 (N.J. Super. Ct. App. Div. Feb. 15, 2007).

Plaintiff's allegations that she and the class "paid a premium for Snapple's beverages but received something less and different from what was promised and bargained for" (*Am. Compl.* ¶ 44) amount to little more than a "formulaic recitation of the elements of [the] cause of action," and "will not do." *Twombly*, 127 S. Ct. at 1974. Plaintiff does not allege that the price paid was higher than competitor's products of the same size and type at the same retail location. Plaintiff's vague and conclusory allegations only underscore that Plaintiff has not and cannot satisfy the ascertainable loss requirement and that her CFA claim must therefore be dismissed. *See Thiedemann*, 872 A.2d at 794-95.

In *Solo v. Bed Bath & Beyond*, for example, the plaintiff brought a CFA action alleging that a store had misrepresented the thread count of its bed linens. *Solo v. Bed Bath & Beyond, Inc.*, 2007 WL 1237825, at *1 (D.N.J. Apr. 26, 2007). Plaintiff alleged that the actual thread count of the sheets was 492 as opposed to the advertised 1000. *Id.* In dismissing the plaintiff's claims, the court concluded that the plaintiff's broad allegations that he did not receive what had been advertised were not sufficient to demonstrate ascertainable loss. *Id.* at *3. Plaintiff was "required to plead specific facts setting forth and defining the ascertainable loss," and the failure to do so was fatal to his CFA claim. *Id.; see also Duffy v.*

*Samsung Elec. Am., Inc.*, 2007 WL 703197 (D.N.J. Mar. 2, 2007) (granting motion to dismiss CFA claim because plaintiff failed to allege quantifiable or measurable loss as opposed to general allegations of harm).

Likewise here, Plaintiff's conclusory allegations do not come close to satisfying the ascertainable loss requirement because (among other reasons) they are based solely on her subjective belief that Snapple beverages are too expensive in relation to the benefits offered. New Jersey law is clear, however, that Plaintiff's loss must rest upon an objectively reasonable basis, *see Dabush*, 874 A.2d at 1120. Indeed, Plaintiff's claims ignore the basic fact that retailers, and not manufacturers such as Snapple, set prices. In all events, Plaintiff cannot satisfy the ascertainable loss requirement for the simple reason that she could only reasonably have intended to purchase a beverage, and that is precisely what she received.

A recent decision by the New Jersey Supreme Court reinforces this conclusion. *International Union of Operating Engineers v. Merck & Co., Inc.*, 929 A.2d 1076 (N.J. 2007) was a putative, national class action brought by a union trust fund that provided prescription drug coverage to its members. The plaintiffs brought claims under the CFA on behalf of "all third-party payors in the fifty states and the District of Columbia who have paid any person or entity for the purchase of Vioxx." *Id.* at 1082. Specifically, plaintiffs alleged that defendant Merck, a New Jersey corporation, had violated the CFA by misrepresenting and concealing

the adverse effects of Vioxx. *Id.* at 1079. No personal injury claims were asserted. Instead, plaintiffs alleged that no third-party payor would have agreed to reimburse its members for Vioxx prescriptions had they known about the alleged health effects. *Id.* at 1081-82.

In a unanimous *per curiam* opinion, the New Jersey Supreme Court reversed the trial and appellate courts and decertified the class. In doing so, the court rejected the plaintiffs' argument that the CFA's ascertainable loss requirement could be satisfied by expert testimony that the price charged for Vioxx was higher than it should have been as a result of the defendant's allegedly fraudulent marketing campaign. *Id.* at 1088. According to the court, this proof could only support a "fraud on the market" theory that has no application outside the securities law context in New Jersey. *Id.* Likewise here, Plaintiff claims that "[a]s a result of its marketing, advertising, and promotion, Snapple was able to and did charge a premium price for its Snapple beverages." *Am. Compl.* ¶ 41. Just as in *International Union*, Plaintiff's allegations cannot satisfy the ascertainable loss requirement and her CFA claim must therefore be dismissed for this reason alone.

### 3. Plaintiff Has Not and Cannot Allege Causality.

Even if Plaintiff could show unlawful conduct *and* an ascertainable loss, which she cannot, her CFA claim still must be dismissed because she cannot show any causal nexus between the two. *See Cannon v. Cherry Hill Toyota, Inc.*, 161 F.

`Supp. 2d 362, 368 (D.N.J. 2001).  Although the CFA does not require Plaintiff to prove reliance, the statute does require her, on behalf of the putative class, to prove a causal relationship between the alleged act of consumer fraud and the damages sustained.  *See Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 464-65 (N.J. 1994); *N.J. Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 178 (N.J. Super. Ct. App. Div. 2003); *see also Fink v. Ricoh Corp.*, 839 A.2d 942, 965 (N.J. Super. Ct. Law Div. 2003) (denying class certification to digital camera purchasers who were allegedly misled by false advertising).  Plaintiff has not, and cannot, do so here.

The CFA's causation element requires "proof that the prohibited act must *in fact* have misled, deceived, induced or persuaded the plaintiff to purchase defendant's product or service."  *Zebersky v. Bed Bath & Beyond, Inc.*, 2006 WL 3454993, at *3 (D.N.J. Nov. 29, 2006) (emphasis added).  Here, Plaintiff does not claim to have seen or heard *even one* specific instance of the Snapple "marketing, advertising, or promotion" about which she complains.  Plaintiff now alleges that she purchased two bottles of Snapple Acai Blackberry.  *Am. Compl.* ¶ 37.  But the conspicuous absence of any allegations concerning how Plaintiff specifically was deceived by Snapple's "marketing, advertising, and promotion" of its beverages is fatal to her claim.

The best Plaintiff can do is mention the mere existence of Snapple's website, but again, she does not allege that she visited the website before allegedly

purchasing the two Snapple acai blackberry juice drinks, or that the website was an "advertisement," or that it contained anything "false" or "misleading."  Plaintiff thus fails to plead, and cannot prove, that she was "*in fact* . . . misled, deceived, induced or persuaded [Plaintiff] to purchase [Snapple's] product . . . ."  *Zebersky*, 2006 WL at *3 (D.N.J. Nov. 29, 2006) (emphasis added), thereby defeating causation (and Plaintiff's CFA claim) as a matter of law.

4.    Plaintiff's Amended Complaint Fails to Satisfy Rule 9(b).

It is well established that CFA claims must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *See Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 510 (D.N.J. 2000).  To satisfy Rule 9(b), a plaintiff must, at a minimum, allege the date, place, or time of the fraud, and must plead who said what to whom as well as the general content of the communication.  *See Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004).  Plaintiff's Amended Complaint alleges that "Snapple marketed, advertised and promoted its beverages as being 'All Natural'" (*Am. Compl.* ¶ 39) and "as containing specific fruit juice(s) when, in fact, the specific fruit juice(s) was not contained in the beverages" (*id.* ¶ 41).  Plaintiff, however, does not and cannot identify with particularity any allegedly deceptive claims she saw or heard prior to purchasing Snapple.  This shortcoming is fatal.

As this Court recently held, a plaintiff must plead the particulars of her own transaction to state a claim under the CFA. *Zebersky*, 2006 WL 3454993, at *4 (dismissing CFA claim because "[p]laintiff fails to allege any specifics regarding her own transaction"); *see also Naporano*, 79 F. Supp. 2d at 511 (holding that plaintiff's "generalized pleadings resemble vague pleadings that the Third Circuit has rejected"); *Kirtley v. Wadekar*, 2006 WL 2482939, at *3 (D.N.J. Aug. 25, 2006) (granting defendant's motion to dismiss because "Plaintiffs do not allege with particularity . . . exactly who bought exactly what product when, *relying on what false representation made by whom*") (emphasis added). That rule applies here, and requires dismissal of Plaintiff's CFA claim.

### E. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT.

As an initial matter, unjust enrichment is an equitable remedy unavailable where, as here, a plaintiff has an adequate legal remedy. *F. Bender Inc. v. Jos. L. Muscarelle, Inc.*, 700 A.2d 374, 376 (N.J. Super. Ct. App. Div. 1997). Moreover, Plaintiff cannot satisfy either requirement for unjust enrichment: "(1) that the defendant has received a benefit from the plaintiff, and (2) that the retention of the benefit by the defendant is inequitable." *Wanaque Borough Sewerage Auth. v. Twp. of West Milford*, 677 A.2d 747, 752 (N.J. 1996); *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994).

Plaintiff does not allege that she conferred any benefit upon Snapple that resulted in an unjust detriment to her or any member of the putative class, nor does Plaintiff allege any "expected remuneration from the defendant at the time [plaintiff] performed or conferred a benefit on defendant . . . ." *See id.* at 554; *Prima v. Darden Rests, Inc.*, 78 F. Supp. 2d 337, 355 (D.N.J. 2000) (dismissing unjust-enrichment claim for lack of such allegations). Plaintiff also fails to plead any facts suggesting that Snapple accepted or retained any benefits under circumstances that would make it inequitable to retain them. *See Heindel v. Pfizer Inc.*, 381 F. Supp. 2d 364, 380 (D.N.J. 2004) (no claim for unjust enrichment where purchaser got his "money's worth" and "suffered no economic injury"). Indeed, Plaintiff's unjust enrichment claim ignores the fundamental fact that retailers, not Snapple, set the price for the beverages Plaintiff allegedly purchased. No amount of re-pleading can cure this fatal flaw.

### F.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF EXPRESS OR IMPLIED WARRANTY.

Counts III and IV of the Amended Complaint allege that Snapple breached express and implied warranties. Neither claim can survive dismissal. To state a claim for breach of the implied warranty of merchantability, Plaintiff must allege that she purchased a product that was not "fit for the ordinary purposes, for which such goods are used" or "did not conform to the promises of affirmation of fact made on the container or label, if any." N.J.S.A. 12A:2-314. Plaintiff does not

and cannot allege that she or any member of the putative class purchased a Snapple beverage that was otherwise unsuited for the ordinary uses for which juice drinks are sold, *i.e.*, liquid refreshment. *See Hoyte v. Yum! Brands*, 489 F. Supp. 2d 24 (D.D.C. 2007) (dismissing claim because plaintiff "does not allege that the food he ordered was in any way unpalatable or that he suffered any immediate ill effects") (internal quotation marks omitted); *Donahue*, 13 A.D.3d at 78-79 (same).

Plaintiff's express warranty claim fares no better. Plaintiff fails to allege that any "affirmation of facts," "promises," or "descriptions" on the product labels at issue were "part of the basis of the bargain." *See Donahue*, 13 A.D.3d at 78-79. Even if Plaintiff had, she cannot show any breach because, as stated, the challenged statements are truthful in context. *See Gerber*, 439 F. Supp. 2d at 1118 (dismissing similar breach of express and implied warranty claims).

## IV.  CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed in its entirety, with prejudice, or alternatively without prejudice pursuant to the primary jurisdiction doctrine.

Dated:  October 18, 2007                    Respectfully submitted,

                                            **BAKER BOTTS L.L.P.**

                                            /s/ Richard B. Harper
                                            Richard B. Harper (RH 5979)
                                            Maureen P. Reid (MR 2326)
                                            Baker Botts L.L.P.
                                            30 Rockefeller Plaza
                                            New York, New York  10112
                                            Tel:   (212) 408-2500
                                            Fax:   (212) 408-2501

                                            Van H. Beckwith (admitted *pro hac vice*)
                                            Allyson N. Ho (admitted *pro hac vice*)
                                            Baker Botts L.L.P.
                                            2001 Ross Avenue
                                            Dallas, Texas  75210
                                            Tel:   (214) 953-6500
                                            Fax:   (214) 953-6503

                                            *Attorneys for Defendant*
                                            *Snapple Beverage Corporation*