UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STACY HOLK, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>SNAPPLE BEVERAGE CORPORATION,<br><br>    Defendant. | CIVIL ACTION<br><br>Civil Action No. 3:07-cv-03018-MJC-JJH |

**DEFENDANT SNAPPLE BEVERAGE CORPORATION'S MEMORANDUM
OF LAW IN SUPPORT OF ITS UNOPPOSED MOTION TO SEAL
MATERIALS IN DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO
<u>EXCLUDE THE EXPERT TESTIMONY OF KEITH R. UGONE, PH.D.</u>**

Seth T. Taube (ST 6088)
Maureen P. Reid (MR 2326)
Baker Botts, LLP
30 Rockefeller Plaza
New York, NY 10112
Tele: (212) 408-2500
Fax: (212) 408-2501
seth.taube@bakerbotts.com
maureen.reid@bakerbotts.com

Van H. Beckwith (admitted *pro hac vice*)
Baker Botts, LLP
2001 Ross Avenue, Suite 600
Dallas, TX 75201
Tele: (214) 953-6500
Fax: (214) 953-6503
van.beckwith@bakerbotts.com

**ATTORNEYS FOR SNAPPLE BEVERAGE
CORPORATION**


**TABLE OF CONTENTS**

I. Introduction ..................................................................................................................1

II. Snapple's Motion To Seal Should Be Granted Upon A Showing Of Good Cause. .................1

    A. The Materials Contain Confidential Business Information of Snapple..........................2

    B. Snapple Has Legitimate Private Interests That Warrant Sealing the Materials. ...........6

        1. Public Disclosure of Information Relating to Snapple's Proprietary Consumer Research Will Harm Snapple's Competitive Position. ............................................6

        2. Public Disclosure of Information Relevant to Snapple's Confidential Pricing Practices and Strategies Will Harm Snapple's Competitive Position. ....................7

        3. Public Disclosure of Information Regarding Non-Public Documents Used to Evaluate Potential and/or Actual Marketing Strategies Will Harm Snapple's Competitive Position.................................................................................................8

        4. Public Disclosure of Commercially Sensitive Information Relating to Snapple's Competitors Will Harm Snapple's Competitive Position. .......................9

    C. Snapple Will Suffer Serious Injuries If the Materials Are Not Sealed........................10

        1. Public Disclosure of Information Relating to Snapple's Proprietary Consumer Research Will Seriously Injure Snapple. .............................................10

        2. Public Disclosure of Information Relevant to Snapple's Confidential Pricing Practices and Strategies Will Seriously Injure Snapple. .........................................10

        3. Public Disclosure of Information Regarding Non-Public Documents Used to Evaluate Potential and/or Actual Marketing Strategies Will Seriously Injure Snapple.................................................................................................................12

        4. Public Disclosure of Commercially Sensitive Information Relating to Snapple's Competitors Will Seriously Injure Snapple. ..........................................13

    D. There Is No Less Restrictive Alternative To Sealing the Materials Available. ..........13

III. Conclusion..................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Arbinet-Thexchange, Inc. v. Mashinsky*,
  No. 06-1916, 2006 WL 2828469 (D.N.J. Sept. 29, 2006) .................... 7, 8, 9, 10, 11, 12, 13, 14

*Bracco Diagnostics, Inc. v. Amersham Health Inc.*,
  No. 03-6025, 2007 WL 2085350 (D.N.J. July 18, 2007) ........................ 1, 2, 7, 8, 9, 10, 11, 14

*Faulman v. Sec. Mut. Fin. Life Ins.*,
  No. 04-5083, 2006 WL 1541059 (D.N.J. June 2, 2006) .......................................... 8, 10, 12, 13

*Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*,
  998 F.2d 157 (3d Cir. 1993) ................................................................................................. 1

*Nixon v. Warner Commc'ns, Inc.*,
  435 U.S. 589 (1978) ............................................................................................................ 1

*Weiner v. Snapple Beverage Corp.*,
  No. 07-8742 ........................................................................................................................ 1

**OTHER AUTHORITIES**

New Jersey Local Civil Rule 5.3 ................................................................................................ 1, 2

I.      **Introduction**

Defendant Snapple Beverage Corporation ("Snapple") requests that this Court seal portions of Snapple's Opposition to Plaintiff's Motion to Exclude the Expert Testimony of Keith R. Ugone Ph.D. (the "Opposition") and certain exhibits submitted in support of the Opposition.[1] Snapple has good cause for this request because all of the materials it seeks to seal contain highly confidential business information of Snapple.[2] Access to this sensitive and non-public information would result in serious injury to Snapple, which competes in the highly competitive ready-to-drink tea and juice drink markets. Snapple has conferred with counsel for Plaintiff and she does not oppose the relief requested in this motion.

II.     **Snapple's Motion To Seal Should Be Granted Upon A Showing Of Good Cause.**

The public's right to access materials filed with pretrial motions is not absolute. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) ("It is uncontested . . . that the right to inspect and copy judicial records is not absolute."); *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157, 165 (3d Cir. 1993). Indeed, courts have inherent authority to deny public access when litigation documents may become a "vehicle for improper purposes." *See Nixon*, 435 U.S. at 598 (noting that courts have denied access to judicial records where they are sources of business information that might harm a litigant's competitive standing). In light of this authority, the public's presumptive right of access must be balanced against a litigant's interest in secrecy. *See Leucadia, Inc.*, 998 F.2d at 165-66. Litigants can protect materials from public disclosure upon a showing of good cause. *Bracco Diagnostics, Inc. v. Amersham Health*

---

[1] Pursuant to New Jersey Local Civil Rule 5.3(c)(3), Snapple filed the Opposition and accompanying exhibits under temporary seal pending the outcome of this motion. (Dkt. 89, 91, 92, 93).

[2] Most of these materials have already been placed under seal by the United States District Court for the Southern District of New York in a closely-related case. *See Weiner v. Snapple Beverage Corp.*, No. 07-8742, in the United States District Court for the Southern District of New York (Dkt 57, 63)

*Inc.*, No. 03-6025, 2007 WL 2085350, at *2 (D.N.J. July 18, 2007). In determining whether good cause exists, this Court looks to the factors outlined by New Jersey Local Civil Rule 5.3 ("Rule 5.3"), which governs requests by a party to seal materials filed with the Court. *Id.* Rule 5.3 requires the requesting party to file a motion describing the following factors: 1) the nature of materials at issue, 2) the legitimate private or public interests which warrant the relief sought, 3) the clearly defined and serious injury that would result if the relief sought is not granted, and 4) why a less restrictive alternative to the relief sought is not available. D.N.J. Civ. R. 5.3(c)(2).

As discussed below, in light of these four factors, there is good cause to grant Snapple's request to seal. Specifically, Snapple asks the Court to seal portions of the Opposition, Exhibits 1, 2, and 3 to the Bryan Mazur Declaration submitted in support of the Opposition ("Mazur Opposition Declaration") in their entirety, and portions of Exhibits 1, 5, 6, and 8 to the Ryan Bangert Declaration submitted in support of the Opposition ("Bangert Opposition Declaration") (collectively the "Materials").[3] The remaining exhibits do not contain confidential information and do not need to be sealed.

    **A.**    **The Materials Contain Confidential Business Information of Snapple.**

The Materials Snapple seeks to seal contain confidential business information of Snapple as described in more detail below. Exhibit 1 to the Mazur Opposition Declaration is an excerpt from Snapple's proprietary consumer research. Ex. 1, Declaration of Bryan Mazur ("Mazur Dec.") ¶ 3. This research—done at the request and expense of Snapple—contains detailed survey results reflecting certain consumers' self-reported habits and perceptions of Snapple products, competing products, and other beverages. *Id.* The research is used by Snapple to

---

[3] The Mazur Opposition Declaration was submitted with the Opposition as Exhibit B and the Bangert Opposition Declaration was submitted with the Opposition as Exhibit A.

better understand certain consumer segments and to explore and evaluate potential business, marketing, and brand-positioning strategies. *Id.*

Exhibits 2 and 3 to the Mazur Opposition Declaration are Snapple wholesale price lists for products sold to distributors in the Northeast region of the United States, including New York and New Jersey.[4] *Id.* at ¶ 4. The price lists contained in Exhibits 2 and 3 to the Mazur Opposition Declaration are spreadsheets that reflect pricing data organized by product flavor, packaging, and product size. *Id.* The spreadsheets include information such as the price Snapple charges it distributors for specific products and includes information related to Snapple's discount pricing practices. *Id.*

Exhibit 1 to the Bangert Opposition Declaration is the Expert Report of Michael B. Mazis, Ph.D. *Id.* at ¶ 5. Portions of the Report contain confidential information regarding proprietary consumer research relating to certain consumers' habits and perceptions of Snapple products. *Id.* The Mazis Report includes specific and detailed results of that research. *Id.* This research was done at the request and expense of Snapple to explore and evaluate potential business, marketing, and brand-positioning strategies and to help Snapple better understand certain consumer segments. *Id.* Other portions of the Report contain statements referencing internal and non-public Snapple business documents used to evaluate actual and/or potential marketing strategies. *Id.* This includes information such as marketing themes Snapple chose to

---

[4] In a motion pending before the Court, Snapple has already asked the Court to seal the materials contained in Exhibits 2 and 3 to the Mazur Opposition Declaration. Snapple bases this request to seal on an identical showing of good cause as identified in that motion. *See* Dkt. 86.

emphasize in its advertising and those themes it chose not to emphasize. *Id.* Snapple seeks only to seal those limited portions of the Mazis Report that reflect this confidential information.[5] *Id.*

Exhibit 5 to the Bangert Opposition Declaration are excerpts from the deposition testimony of Snapple employee, Kyle Currlin. *Id.* at ¶ 6. During his deposition, Mr. Currlin was questioned and testified about confidential proprietary consumer segment research done at the request and expense of Snapple. *Id.* This research includes information relating to consumer perceptions of Snapple products and was done to help Snapple better understand certain consumer segments and to explore potential business, marketing, and brand-positioning strategies. *Id.* Mr. Currlin's deposition reflects specific results of the research and Snapple's analysis and use of this information. *Id.* Snapple asks the Court to seal only the portions of the deposition that reveal this confidential information.[6] *Id.*

Exhibit 6 to the Bangert Opposition Declaration are excerpts from the deposition testimony of Keith Ugone, Ph.D. *Id.* at ¶ 7. During his deposition, Dr. Ugone testified and was questioned about his Expert Report. *Id.* The deposition reflects information from his Report relating to Snapple's confidential pricing strategies and practices, including price variations for Snapple products, and a price comparison between Snapple and some of its competitors derived from proprietary data. *Id.* Dr. Ugone also references confidential consumer research discussed

---

[5] For the Court's review, Snapple has attached to the Mazur Declaration as Exhibit 1A proposed redactions to the Mazis Report. An unredacted version of the Mazis Report has been filed under temporary seal pending the outcome of this motion. (Dkt. 93).
[6] Exhibit 1B to the Mazur Declaration are Snapple's proposed redactions of Mr. Currlin's deposition. An unredacted version of Mr. Currlin's deposition has been filed under temporary seal pending the outcome of this motion. (Dkt. 93).

4

in Dr. Mazis' Report. *Id.* Snapple asks the Court to seal the portions of Dr. Ugone's deposition that reflect this non-public information.[7] *Id.*

Exhibit 8 to the Bangert Opposition Declaration are excerpts from the deposition of Bryan Mazur, Vice President, Marketing for Snapple. *Id.* at ¶ 8. At his deposition, Mr. Mazur testified about certain confidential Snapple pricing information and commercially sensitive information relating to Snapple's competitors.[8] *Id.*

Snapple also seeks to protect from public disclosure limited portions of the Opposition that reveal commercially sensitive information.[9] The Opposition contains information relating to Snapple's confidential pricing strategies and practices, including price variations for Snapple products, and a price comparison between Snapple and competitors' products derived from proprietary data. *Id.* at ¶ 9. The Opposition also reflects results from Snapple's non-public consumer research done at the request of Snapple to better understand certain consumer segments' perceptions of Snapple and to evaluate potential business, marketing, and brand-positioning strategies. *Id.* Finally, the Opposition quotes or references some of the confidential information contained in the Exhibits described above.[10] *See, e.g,* Opposition at 8.

---

[7] Exhibit 1C to the Mazur Declaration are Snapple's proposed redactions of Dr. Ugone's deposition. An unredacted version of Dr. Ugone's deposition has been filed under temporary seal pending the outcome of this motion. (Dkt. 93). In a motion pending before the Court, Snapple has already asked the Court to seal the portions of Dr. Ugone's deposition identified in Exhibit 1C. (Dkt. 69-70).

[8] Exhibit 1D to the Mazur Deposition are Snapple's proposed redactions of Mr. Mazur's deposition. An unredacted version of Mr. Mazur's deposition has been filed under temporary seal pending the outcome of this motion. (Dkt. 93).

[9] Exhibit 1E to the Mazur Deposition are Snapple's proposed redactions of the Opposition. An unredacted version of the Opposition has been filed under temporary seal pending the outcome of this motion. (Dkt. 89).

[10] To the extent the Opposition references or quotes the confidential information contained in the Exhibits at issue in this motion, Snapple bases its request to seal those portions of the Opposition on an identical showing of good cause set forth for the Exhibits.

It is Snapple's practice to maintain the information in Exhibits 1, 2, and 3 to the Mazur Opposition Declaration, portions of Exhibits 1, 5, 6, and 8 to the Bangert Opposition Declaration, and portions of the Opposition as confidential and to withhold the information from disclosure to the general public and Snapple's competitors.[11]  *Id.* at ¶ 10.  These materials contain certain information still relevant today in connection with Snapple's competition against its chief competitors.  *Id.*

### B. Snapple Has Legitimate Private Interests That Warrant Sealing the Materials.

The confidential business Materials described above fall into four categories: 1) information relating to Snapple's proprietary consumer research, 2) information relevant to Snapple's confidential pricing practices and strategies, 3) information regarding non-public documents used to evaluate potential and/or actual marketing strategies, and 4) commercially sensitive information relating to Snapple's competitors.  As described below, Snapple has legitimate private interests that warrant sealing the materials in each category.

#### 1. Public Disclosure of Information Relating to Snapple's Proprietary Consumer Research Will Harm Snapple's Competitive Position.

Exhibit 1 to the Mazur Opposition Declaration, Exhibits 1, 5, and 6 to the Bangert Opposition Declaration, and the Opposition reflect information relating to Snapple's proprietary consumer research.  *See* Ex. 1, Mazur Dec. ¶¶ 3, 5-7, 9.  Disclosure of this information to the

---

[11] In order to protect this information during litigation, Exhibits 1, 2, and 3 to the Mazur Opposition Declaration and Exhibits 1, 5, 6, and 8 to the Bangert Opposition Declaration have been designated "Confidential" pursuant to the parties' Stipulated Confidentiality and Protective Order.  The Stipulated Confidentiality and Protective Order requires that Snapple designate documents as "Confidential" only when it has a good faith belief that the information constitutes, contains, reveals, or reflects proprietary or confidential business, technical, or financial information, including, but not limited to: trade secrets; business strategies; marketing research, plans, transactions, and strategies; tax information; proprietary contracts; competitive analyses; costs; pricing; market development and planning; salaries and other employment terms; strategic plans; and analysis and discussion concerning possible business combinations.  (Dkt. 54).

public—and, by extension—Snapple's competitors, would harm Snapple's standing in the highly competitive ready-to-drink juice and tea markets by giving competitors an unfair advantage. *Id.* at ¶11. Specifically, disclosure of Snapple's proprietary consumer segment research would allow competitors to compete more efficiently against Snapple by making more informed decisions regarding their own business, marketing, and brand-positioning strategies. *See id.* Protection of this commercially sensitive material to maintain competitive position is a legitimate private interest that weighs in favor of sealing Exhibit 1 to the Mazur Opposition Declaration in its entirety and portions of the Opposition and Exhibits 1, 5, and 6 to the Bangert Opposition Declaration. *See Arbinet-Thexchange, Inc. v. Mashinsky*, No. 06-1916, 2006 WL 2828469, at *2 (D.N.J. Sept. 29, 2006) (finding that movant had a legitimate interest in protecting information that contained a view into the company's direction and marketing efforts and an analysis of available market opportunities); s*ee also Bracco Diagnostics, Inc.*, 2007 WL 2085350, at *5 (noting that the desire to "maintain[] competitiveness is a legitimate private interest which warrants sealing").

>  2.  **Public Disclosure of Information Relevant to Snapple's Confidential Pricing Practices and Strategies Will Harm Snapple's Competitive Position.**

Exhibits 2 and 3 to the Mazur Opposition Declaration, Exhibits 6 and 8 to the Bangert Opposition Declaration, and the Opposition contain private information relevant to Snapple's confidential pricing practices and strategies. *See* Ex. 1, Mazur Dec. ¶¶ 4, 7-9, 12. Snapple seeks to protect this information from public disclosure to maintain its competitive position. *Id.* at ¶12. Disclosure of this information would allow competitors to gain insight into Snapple's business that they could use to make more informed decisions regarding their own pricing practices and strategies. *Id.* Specifically, competitors could implement the non-public pricing strategy discussed in the Opposition or Exhibit 6 to the Bangert Opposition Declaration or use the pricing

7

information in Exhibits 2 and 3 to the Mazur Opposition Declaration, Exhibits 6 and 8 to the Bangert Opposition Declaration, and the Opposition to shape their own pricing practices. *See id.* Use of this information in this manner would afford competitors a competitive advantage that they could use to compete more efficiently against Snapple. *Id.*

Protection of this commercially sensitive material to maintain competitive position is a legitimate private interest that weighs in favor of sealing Exhibits 2 and 3 to the Mazur Opposition Declaration in their entirety and portions of Exhibits 6 and 8 to the Bangert Opposition Declaration and the Opposition. *See Bracco Diagnostics, Inc.*, 2007 WL 2085350, at *5-6 (finding that movant had a legitimate private interest that justified sealing commercially sensitive information including customer sales data and cost/profit information); *see also Faulman v. Sec. Mut. Fin. Life Ins.*, No. 04-5083, 2006 WL 1541059, at *2 (D.N.J. June 2, 2006) (finding that movant had a legitimate business reason to seal portion of exhibit containing materials about market penetration in particular geographic areas that competitor could use to make more informed decisions regarding competition). Because Snapple has a legitimate business interest to seal these materials, there is good cause to grant Snapple's request.

   **3.**   **Public Disclosure of Information Regarding Non-Public Documents Used to Evaluate Potential and/or Actual Marketing Strategies Will Harm Snapple's Competitive Position.**

Exhibit 1 to the Bangert Opposition Declaration contains information regarding non-public documents used to evaluate potential and/or actual marketing strategies. *See* Ex. 1, Mazur Dec. ¶¶ 5, 13. Disclosure of this information to the public would harm Snapple's competitive standing by giving competitors an unfair advantage. *Id.* Specifically, disclosure of this information would allow competitors to make more informed decisions regarding their own marketing strategies. *Id.* Protection of this commercially sensitive material to maintain competitive position is a legitimate private interest that weighs in favor of sealing. *See Arbinet-*

8

*Thexchange, Inc.*, 2006 WL 2828469, at *2 (finding that movant had a legitimate interest in protecting an analysis of available market opportunities that included a "view into the company's . . . marketing efforts" and the company's "roadmap for . . . marketing plans"); s*ee also Bracco Diagnostics, Inc.*, 2007 WL 2085350, at *5 (noting that the desire to "maintain[] competitiveness is a legitimate private interest which warrants sealing").

> 4. **Public Disclosure of Commercially Sensitive Information Relating to Snapple's Competitors Will Harm Snapple's Competitive Position.**

Exhibit 8 to the Bangert Opposition is the deposition testimony of Bryan Mazur that contains commercially sensitive information relating to Snapple's competition. *See* Ex. 1, Mazur Dec. ¶¶ 8, 14. During his deposition, Mr. Mazur testified about products manufactured by competitors that Snapple views as its chief competition. *Id.* at ¶ 14. He gave specific details including what packaging and product lines Snapple considers most relevant to its competition with competitors. *Id.* Exhibit 6 to the Bangert Opposition Declaration is the deposition testimony of Dr. Ugone. *Id.* at ¶¶ 7, 14. In his deposition, Dr. Ugone discusses a price analysis he performed between Snapple and competitors' products. *Id.* Dr. Ugone testifies as to which competitors provided an appropriate "benchmark" for his analysis and why. *Id.* at ¶ 14.

Snapple asks the Court to seal this information to protect its competitive position. *See id.* Access to this information would allow competitors to gain insight into Snapple's direction and competitive efforts and, therefore, make more informed decisions regarding their competitive efforts. *See id.* This is a private interest that weighs in favor of finding good cause. *See Arbinet-Thexchange, Inc.*, 2006 WL 2828469, at *2 (finding that movant had a legitimate interest in protecting an analysis of available market opportunities that included a "view into the company's . . . marketing efforts" and "competitive strategies"); s*ee also Bracco Diagnostics,*

*Inc.*, 2007 WL 2085350, at *5 (noting that the desire to "maintain[] competitiveness is a legitimate private interest which warrants sealing").

    **C.**    **Snapple Will Suffer Serious Injuries If the Materials Are Not Sealed.**

        **1.**    **Public Disclosure of Information Relating to Snapple's Proprietary Consumer Research Will Seriously Injure Snapple.**

Snapple will suffer serious injuries if Exhibit 1 to the Mazur Opposition Declaration and portions of Exhibits 1, 5, and 6 to the Bangert Opposition Declaration and the Opposition are not sealed. Ex. 1, Mazur Dec. ¶ 11. As discussed above, these materials reflect information relating to Snapple's proprietary consumer segment research. If this information is disclosed to the public, competitors could better understand the measured perceptions of certain segments of Snapple consumers and use that information to focus their competitive marketing efforts. *Id.* Likewise, competitors could use the research to shape and evaluate their own business, marketing, and brand-positioning strategies. *Id.* Such injuries are considered clearly defined and serious and warrant sealing Exhibit 1 to the Mazur Opposition Declaration in its entirety and portions of Exhibits 1, 5, and 6 to the Bangert Opposition Declaration and the Opposition. *See Arbinet-Thexchange, Inc.*, 2006 WL 2828469, at *2-3 (finding that the movant would suffer a serious injury where the materials contained "competitive business strategies and assessments of business opportunities"); *Faulman*, 2006 WL 1541059, at *2 (finding movant would suffer a serious injury where competitors could gain an unfair advantage in the marketplace if information from movant's confidential database was disclosed).

        **2.**    **Public Disclosure of Information Relevant to Snapple's Confidential Pricing Practices and Strategies Will Seriously Injure Snapple.**

Snapple will suffer serious injuries if Exhibits 2 and 3 to the Mazur Opposition Declaration, and portions of Exhibits 6 and 8 to the Bangert Opposition Declaration and the Opposition are not sealed because the public and Snapple's competitors will have access to

Snapple's commercially sensitive pricing information and data. *See* Ex. 1, Mazur Dec. ¶ 12. This information would give Snapple's competitors an unfair advantage and allow them to compete more efficiently against Snapple because they could use the information to make more informed decisions regarding their own pricing practices and strategies. *Id.*

Specifically, because Exhibits 2 and 3 contain detailed information relating to pricing practices in particular geographic markets for individual Snapple products, competitors could use the information to shape pricing decisions at a specific level for the New Jersey and New York markets. *Id.* Similarly, Exhibit 6 to the Bangert Opposition Declaration and the Opposition contain information relating to a particular pricing strategy employed by Snapple. *Id.* If this information is made public, competitors could implement this pricing strategy to further their own business to the detriment of Snapple. *Id.* Additionally, Exhibit 6 to the Bangert Opposition Declaration and the Opposition reflect information relevant to an analysis of price variations between Snapple products and competitors' products. *Id.* This information would allow competitors to more effectively evaluate their current pricing strategies and practices thereby making use of Snapple's proprietary information. *Id.* Finally, competitors could unfairly use the specific pricing data contained in Exhibits 2 and 3 to the Mazur Opposition Declaration and Exhibit 8 to the Bangert Opposition to set their own prices to the detriment of Snapple, consumers, and competition in general. *Id.*; *see also Bracco Diagnostics*, 2007 WL 2085350, at *5 (finding that similar concerns amounted to a clearly defined and serious injury).

The injuries outlined above qualify as clearly defined and serious and weigh in favor of finding good cause. *See Bracco Diagnostics, Inc.*, 2007 WL 2085350, at *5 (finding that materials should be sealed where competitors could use movant's cost information to set their own prices to the detriment of movant); *see also Arbinet-Thexchange, Inc.*, 2006 WL 2828469,

at *2-3 (granting movant's motion to seal where denial of relief would mean that competitors would have access to proprietary information including the movant's competitive strategies); *Faulman*, 2006 WL 1541059, at *2 (finding movant would suffer a serious injury where competitors could gain an unfair advantage in the marketplace if information from movant's confidential database was disclosed).

### 3. Public Disclosure of Information Regarding Non-Public Documents Used to Evaluate Potential and/or Actual Marketing Strategies Will Seriously Injure Snapple.

Public disclosure of portions of Exhibit 1 to the Bangert Opposition Declaration will also seriously injure Snapple's competitive position. Ex. 1, Mazur Dec. ¶ 13. Exhibit 1 to the Bangert Opposition Declaration contains information regarding non-public documents used to evaluate potential and/or actual marketing strategies. *Id.* Access to this confidential information would seriously injure Snapple because competitors could use the information to make more informed decisions regarding their own marketing strategies. *Id.* Similarly, disclosure of information regarding marketing strategies would allow competitors to more effectively focus their competitive efforts against Snapple. *Id.* This would allow competitors to compete more efficiently against Snapple by making use of Snapple's resources at no cost. *Id.* Such injuries qualify as serious and weigh in favor of sealing portions of Exhibit 1 to the Bangert Opposition Declaration. *See Arbinet-Thexchange, Inc.*, 2006 WL 2828469, at *2-3 (finding that movant would suffer a serious injury where materials included "competitive strategies and assessments of business opportunities" and offered a "view into the company's . . . marketing efforts"); *see also Faulman*, 2006 WL 1541059, at *2 (finding movant would suffer a serious injury where competitors could gain an unfair advantage in the marketplace if information from movant's confidential database was disclosed).

      **4.     Public Disclosure of Commercially Sensitive Information Relating to Snapple's Competitors Will Seriously Injure Snapple.**

Exhibits 6 and 8 to the Bangert Opposition Declaration contain commercially sensitive information relating to Snapple's competition. *See* Ex. 1, Mazur Dec. ¶¶ 7-8, 14. Portions of Exhibit 8 reveal which competitors Snapple views as its chief competition, including what packaging and product lines Snapple considers most relevant to this competition. *Id.* at ¶ 14. Portions of Exhibit 6 reveal information regarding competitors Snapple's expert, Dr. Ugone, considered appropriate "benchmarks" for a price comparison analysis. *Id.* Access to this information will seriously injure Snapple because it would alert competitors as to which products or competitors Snapple views as its competition. *Id.* This would give competitors insight into Snapple's direction and competitive efforts. *Id.* Specifically, competitors could use the testimony to focus their competitive efforts on particular products and reserve resources for products not identified by Snapple as its chief competition. *Id.* This would allow competitors to compete more efficiently against Snapple. *Id.* These injuries weigh in favor of granting Snapple's request to seal. *See Arbinet-Thexchange, Inc.*, 2006 WL 2828469, at *2-3 (finding that movant would suffer a serious injury where materials included "competitive strategies and assessments of business opportunities" and offered a "view into the company's . . . marketing efforts"); *see also Faulman*, 2006 WL 1541059, at *2 (finding movant would suffer a serious injury where competitors could gain an unfair advantage in the marketplace if information from movant's confidential database was disclosed).

      **D.     There Is No Less Restrictive Alternative To Sealing the Materials Available.**

Unless they are sealed, the public and Snapple's competitors will have unrestricted access to the Materials. Snapple will have no control over who views this material or how that material is used. As detailed above, the Materials are valuable to Snapple's competitors and are the type

of information that is susceptible to misuse. When, like here, access to commercially sensitive information may harm a litigant's market competitiveness, this Court has found that there is no less restrictive alternative to sealing the material. *See Bracco Diagnostics, Inc.*, 2007 WL 2085350, at *6. Furthermore, Snapple has not asked the Court to seal the Opposition and its exhibits in their entirety. Instead, Snapple has carefully limited its request to seal only those specific exhibits and portions of the Opposition that reflect confidential information.

Additionally, had Snapple avoided citing the Materials because they contained confidential information, Snapple would have been limited in its ability to advocate its position. This Court has found that when confidential documents are important to the litigation, there is no less restrictive alternative to sealing. *See Arbinet-Thexchange, Inc.*, 2006 WL 2828469, at *2 (finding that there was no less restrictive alternative to sealing when Court needed to examine document to resolve claims). For these reasons, there is no less restrictive alternative available to sealing the Materials and, therefore, good cause exists to grant Snapple's request.

**III.    Conclusion**

For the reasons set forth above, Snapple respectfully requests that the Court seal Exhibits 1, 2, and 3 to the Mazur Opposition Declaration in their entirety, the portions of Exhibits 1, 5, 6, and 8 to the Bangert Opposition Declaration identified in Exhibits 1A-1D to the Mazur Declaration, and the portions of the Opposition identified in Exhibit 1E to the Mazur Declaration.

Dated: June 2, 2010                                Respectfully submitted,

/s/ Maureen P. Reid
Seth T. Taube (ST 6088)
Maureen P. Reid (MR 2326)
30 Rockefeller Plaza
New York, NY 10112
Tele:   (212) 408-2500
Fax:    (212) 408-2501
seth.taube@bakerbotts.com
maureen.reid@bakerbotts.com

Van H. Beckwith (admitted *pro hac vice*)
2001 Ross Avenue, Suite 600
Dallas, TX 75201
Tele:   (214) 953-6500
Fax:    (214) 953-6503
van.beckwith@bakerbotts.com

**ATTORNEYS FOR SNAPPLE BEVERAGE CORPORATION**